## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF MARYLAND

**DANIEL H. ROSS**
15722 Chasey Lane
Brandywine, Md  20613 ]

      Plaintiff, ]

**FEDERAL BUREAU OF ACOHOL,**
**TOBACCO, AND FIREARMS,**
935 Pennsylvania Avenue, N.W.,
Washington, DC  20535; ]

**FEDERAL BUREAU OF INVESTIGATION,** ]
935 Pennsylvania Avenue, N.W.,
Washington, DC  20535; ]

and ]

**UNKNOWN OFFICIALS**
Of the Federal Bureau of ATF and FBI,
In their personal capacities, c/o
935 Pennsylvania Avenue, N.W.,
Washington, DC  20535, ]

      Defendants. ]



PJM 10 CV 3090

2010 NOV -1  P 2: 38

CLERK'S OFFICE
AT GREENBELT

FILED
U.S. DISTRICT COURT
DISTRICT OF MARYLAND

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF
## AND JURY DEMAND

    Plaintiff Daniel H. Ross submits this Complaint for Declaratory and

Injunctive Relief and Jury Demand.  As grounds therefore, Plaintiff alleges

as follows:

## JURISDICTION AND VENUE

1

This court is vested with jurisdiction over these claims by operation of 28 U.S.C. § §1331 and 1343, because Plaintiff's claims arise under federal law and the U. S. Constitution.

2

This court is vested with authority to grant the requested Declaratory relief by operation of 28 U.S.C. § § 2201 and 2202 and pursuant to Rule 57 of the Federal Rules of Civil Procedure.

3

This court is vested with authority to permit Jury Demand pursuant to Rule 38 of the Federal Rules of Civil Procedure, and files this action under Bivens v. Six Unknown Names Agents, 403 U. S. 388 (1971) in this court.

4

Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) and (e).

## PARTIES

5

Plaintiff Daniel H. Ross is a U. S. Citizen and a resident of the State of Maryland. He formerly was a resident of the State of North Carolina.

6

Defendant Federal Bureau of Alcohol Tobacco and Firearms is an agency of the U. S. Government. The ATF's headquarters is located at 935 Pennsylvania Avenue, N. W., Washington, DC 20535. Defendant ATF can be served with process by serving the agency manager and address are: Director, Federal Bureau of Investigation J. Edgar Hover F.B.I. Building, 935 Pennsylvania Avenue, N. W., Washington, DC 20535.

7

Defendant FBI is an agency of the U. S. Government. The FBI's headquarters is located at 935 Pennsylvania Avenue, N. W., Washington, DC 20535. Defendant FBI can be served with process by serving the agency manager and address are: Director, Federal Bureau of Investigation J. Edgar Hover F.B.I. Building, 935 Pennsylvania Avenue, N. W., Washington, DC 20535.

## STATEMENT OF FACTS

8

After analyzing the history of the Second Amendment, among other things, the Supreme Court held in District of Columbia v. Heller, 554 U. S. __,128 S. Ct. 2783, 171 L. Ed. 2d 637 (2008): "that the Second Amendment conferred an individual right to keep and bear arms for traditionally lawful purposes, such as self-defense within the home." Heller, 128 S. Ct. at 2799.

9

Article 1, Section 30 of the North Carolina Constitution provides, in pertinent part: "A well regulated militia being necessary to the security of a free State, the right of the people to keep and bear arms shall not be infringed."

10

The level of substantive due process and equal protection provided by the North Carolina Constitution is at least as broad as that of the United States Constitution if not broader. See Guice, 141 N.C. App. 177, 541 S.E. 2d 474 (2000) and compare U. S. Const. 2 Amend.

11

Plaintiff formerly was a convicted felon of the State of North Carolina. Among the states, North Carolina is a state that "automatically restores prisoners' civil rights upon release from prison. N. C. G. S. 13-1. Upon Plaintiff's release from the North Carolina prison on June 1, 1983, his civil rights were automatically restored, and Plaintiff resumed citizenry and residency of the State of North Carolina.

12

On October 29, 2003, Plaintiff was employed in Law Enforcement to protect, and had access to a firearm in the performance of his duties in the Commonwealth of Virginia; and adjudged and found to be of good moral character by the Commonwealth of Virginia's Department of Criminal Justice Services.

13

Prior to June 1, 1983, in 1965, Plaintiff was convicted in North Carolina state court of a crime classified as a misdemeanor in that state that did not exceed a term of two years imprisonment. In 1969, Plaintiff was convicted in North Carolina state court of a crime classified as a felony in that state that did exceed a term of one year imprisonment that was nullified on June 1, 1983. With regards to § 922(g) (1), Plaintiff's 1969 felony

conviction was nullified on June 1, 1983. With regards to both Sections 921(a) (20) and 922(g) (1), on June 1, 1983, Plaintiff's civil rights were fully restored by operation of the sovereign State of North Carolina by virtue of Section 13-1 of the North Carolina General Statutes, and Article 1, Section 30 of the Constitution of North Carolina with regards to both Plaintiff's 1969 felony conviction, and Plaintiff's 1965 misdemeanor conviction.

14

From June 1, 1983 to the filing of this Complaint, Plaintiff has not been convicted in any court of a felony or misdemeanor crime punishable by imprisonment for a term that exceed one year under the laws of the United States nor has Plaintiff acted in a manner that is dangerous to the public safety.

15

On January 5, 2010, Plaintiff applied to purchase a hunting rife from a licensed pawnbroker but was refused, notwithstanding the very fact that Plaintiff's 27 years of law abiding responsible conduct from June 1, 1983 to the filing of this Complaint res ipsa loquitur.

16

Defendants acted arbitrarily, capriciously, and contrary to law contrary to their own procedures to grant Plaintiff permission to possess a firearm, in violation of 28 C.F.R. § 25.5, and 18 U.S.C. § 921(A)(20).

17

Defendants seek to use their nondiscretionary judgment to determine when it is appropriate to comply with 28 C.F.R. § 25.5, and Title 18 United States Code, Sections 921(a) (20) and 922(g) (1) in granting permission to possess a firearm, and even in instances where self defense would be otherwise lawful under both state and federal Constitutions and laws thereof.

18

In particular, it is unreasonable to assert that the Plaintiff who was employed in Law Enforcement to protect, and had access to a firearm in the performance of his duties in the Commonwealth of Virginia; and adjudged and found to be of good moral character by the Commonwealth of Virginia's Department of Criminal Justice Services, is in reality so dangerous that any possession at all of a firearm would pose a significant threat to public safety.

19

Defendants' evaluation as a basis for not complying with 28 C.F.R. 25.5, § 921(a) (20) and 922(g) (1) in refusing to grant Plaintiff permission to

possess a firearm was unlawful.   In Defendants' acknowledgment letter dated July 12, 2010, Defendants asserted that potentially prohibitive criteria exists to authorize your eligibility to purchase or redeem a firearm due to information retained by the **ATF/FBI**  that is misleading and incomplete, and is made available to your detriment  (emphasis added).   A copy is attached.

20

Contrary to law and contrary to Defendants' own procedures, Defendants have demonstrated proven ability to deny Plaintiff's eligibility to purchase a firearm due to information retained by Defendants that is misleading, incomplete, and is made available to Plaintiff's detriment.

21

On April 1, 2009, Plaintiff received notification from the United States Personnel Security Branch of the U. S. Environmental Protection Agency informing that his background investigation revealed that he was a convicted felon for the crime of first degree murder requiring an explanation.   Plaintiff had to report to the Personnel Security Branch Office and submit proof that his felony conviction exceeding one year was nullified on June 1, 1983.

22

On March 11, 2010, Plaintiff received a telephone call from the United States Executive Secretary to the White House, in the course of his employment at work, advising him that the United States Secret Service had declined Plaintiff's wife's request that he be permitted to tour the White House with Plaintiff's wife and her federal co-workers, notwithstanding the very fact that Plaintiff, at all times relevant and pertinent to the claims alleged herein, Plaintiff was and still is a contractor with the Federal Government. On March 12, 2010 at approximately 11:03 a. m., Plaintiff received a telephone call from Secret Service William Gunter. Mr. Gunter advised Plaintiff that an FBI NICS background investigation revealed that Plaintiff was a convicted felon requiring proof to the contrary before he could be allowed to tour the Whitehouse with others federal Workers. On March 12, 2010, Plaintiff was not a convicted felon of the crime first degree murder. Said felony conviction was nullified on June 1, 1983.

23

Plaintiff has never demonstrated any involvement of antigovernment behavior such as carrying of firearms in sensitive places such as schools or in a government facility nor posed any threat to the government officials and law enforcement safety.

24

Defendants have created, and continue to create roadblocks, to basic necessities making it extremely easy for law enforcement, employers and others to discriminate against Plaintiff in employment, education, professional licensing and loans to rebuild his life, support his family, and become a productive member of his community on equal terms.

25

Defendants have demonstrated that retention of Plaintiff's arrest record has been used improperly, and there is a substantial likelihood the retained records will continue to be used improperly against Plaintiff until an injunction issue prohibiting Defendants from claiming Plaintiff to be an "irresponsible and dangerous felon" in relation to future employment, educational applications, and professional licensing.

26

Although Plaintiff has demonstrated good moral character and fitness since June 1, 1983, Defendants' "Continuing Violations" have impugned and defamed his good moral character and fitness even in instances where self defense would be lawful and contrary to law and contrary to Defendants' own procedures, Plaintiff is still being portrayed by Defendants

to be a "potentially irresponsible and dangerous felon" rather than a law-abiding, responsible tax-paying citizen with respect for law and order.

27

Title 18 U. S. C. Section 922 (g) (1) was passed as part of the Gun Control Act of 1968, Pub. L. No. 90-618, 82 Stat. 1213.   This statute criminalizes the shipping, transport or possession of a firearm connected with interstate commerce by any person "who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year."   Eighteen years later, in 1986, Congress passed an amendment which exempted from prosecution felons who, under the law of the jurisdiction of their predicate conviction, had received a pardon, expungement, or restoration of civil rights.   18 U.S.C. § 921(A)(20) ("Firearms Owners' Protection Act") ("FOPA").   This subsection provides: "Any conviction which has been expunged, or set aside or for which a person has been pardoned or has had civil rights restored, shall not be considered a conviction for purposes of this chapter, unless such pardon, expungement, or restoration of civil rights expressly provides that the person may not ship, transport, possess, or receive firearms. Id. (emphasis added).

28

The law governing eligibility to purchase a firearm defines "felony" to exclude certain state crimes punishable by no more than two years' imprisonment by virtue of §921(a) (20) (B). Any "misdemeanor" offense not punishable by no more than two years in prison meets the requirements of §921(a) (20) (B). Any other interpretation brings the regulation in conflict with the statute. It is clear that "regulations, in order to be valid must be consistent with the statute under which they are promulgated," and the agency's "`interpretation' of the statute cannot supersede the language chosen by Congress." The power of an administrative officer or agency to administer a federal statute and "to prescribe rules and regulations to that end is not the power to make law ... but the power to adopt regulations to carry into effect the will of Congress as expressed by the statute," and a regulation which operates to create a rule out of harmony with the statute, is a mere nullity.

29

Between April 1, 2009 through March 12, 2010, the existing FBI's NICS Data Base Record System represented that Plaintiff is a "potentially irresponsible and dangerous felon." Defendants were complicit in classifying and portraying Plaintiff as such, absent his awareness, and a due process

hearing to defend and demonstrate his good moral character.  Defendants'
portrait was patently defamatory, patently false, foreseeable, and
preventable.

30

In as much as Plaintiff bases his challenges with specificity on his
right to fundamental protections to bear arms for self-defense and hunting
purposes on equal terms, Plaintiff seeks Declaratory and Injunctive Relief.

31

In as much as Plaintiff bases his challenges with specificity on his
right to Equal Employment Opportunities, Plaintiff requests a jury trial.

32

Plaintiff has demonstrated that he is not among the class of citizens
who pose a threat to public peace and safety.  Accordingly, Plaintiff brings
an equal protection challenge that § 922(g) (1) violates his right to equal
protection for the reasons as follows: (1) Plaintiff is not a [c]reature of the
United States of America for the purpose to be singled out for special and
specially unfavorable treatment by Congress;  (2) Self-defense is a basic
right, recognized by many legal systems from ancient times to the present,
this basic right is being abrogated, and Plaintiff does not fall outside of
Second Amendment protections and the Supreme Court's announcement in

District of Columbia v. Heller (2008);  (3) by the affirmative act of pardon, expungement or restoration, 18 U. S. C. § 921(a) (20), the state had declared its renewed trust in that person and Plaintiff's civil rights to possess firearms were automatically restored upon his release from prison on June 1, 1983; (4)  it is beyond the power of Congress to legislate control over States' Legislation and 922(g) (1) frustrates enforcement of States' Legislation (Restoration of Civil Rights) and amounts to a significant incursion on a traditional and important area of state concern, altering the constitutional relationship between the Federal Government and the States; (5) Congress cannot impose the type of substantive restraint 922(g) (1) imposes on state legislation because a provision of the Bill of Rights that protects a right that is fundamental from an American perspective applies equally to the Federal Government and the States; (6) 922 (g) (1) is invalid, nevertheless, as "arbitrary and capricious" in violation of the Second, Ninth, and Tenth Amendments to the United States Constitution and, the Privilege and Immunities Clause, and Article 1, Section 30 of the North Carolina Constitution, for failure to set forth a rationale for its ***non-distinction*** between violent felons, non-violent felons and non-felons, including those whose felony conviction resulted in loss of civil rights;  (7) the exemption for felons who have "had civil rights restored" should extend to non-felons

who have "had civil rights restored" and that it is anomalous for the Federal Government to treat non-felons who have "had civil rights restored" more harshly than felons who have "had civil rights restored" as long as both classes of persons share the operative status of full citizenship, the government should treat them similarly in exercising "fundamental protections to defend their homes, families, or themselves;" (8) the Firearm regulatory scheme at issue here is not consonant with the concept of equal protection embodied in the Due Process Clause, since Congress could not rationally conclude that violent felons, non-violent felons, and even non-felons is a sufficient basis to classify as a "potentially irresponsible and dangerous person" so to keep firearms away from persons; (9) § 922 (g) (1) is unconstitutional as applied to Plaintiff because of its disqualifications of any person "who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year," irrespective of whether the individual is a violent felon, a non-violent felon or a non-felon such as Plaintiff, who as has had civil rights restored, the statute, rather than providing a fair alternative construction, is inconsistent with § 921(a)(20)(b) which provides "any misdemeanor that was not punishable by a term of imprisonment of more than two years satisfies the requirements to exercise fundamental protections to defend their homes, families, or themselves; (10)

Defendants never had a valid legal basis for withholding permission from Plaintiff to purchase a firearm, but only sought to delay and/or wrongfully deny Plaintiff exercise of fundamental protections to defend his home, family, or himself, and general laws and policies that prohibit arbitrary discrimination would continue to prohibit discrimination on the basis of felons' and non-felons' conduct as well; and § 922(g) (1) does not protect minorities lacking political clout and neglected by those holding political power, the kind of prohibitive discrimination criteria which the Privileges and Immunities Clause was designed to prevent.

## COUNT I

### 33

Violation of the 28 C.F.R. § 25.5, and 18 U.S.C. § 921(A)(20) and the Second, Ninth, and Tenth Amendments of the United States Constitution, , the Commerce, Privilege and Immunities Clause, and Article 1, Section 30 of the North Carolina Constitution, and laws thereof. Self-defense is a fundamental right. Plaintiff has fundamental protections to defend his home, family, or himself within his home on equal terms.

COUNT II

34

Violation of Title VII of the Civil Rights Act of 1964, as codified, 42 U.S.C. § § 2000e to 2000e-17 (amended in 1972, 1978 and by the Civil Rights Act of 1991, Pub. L. No. 102-106)   Plaintiff enjoys the right to Equal Employment Opportunities.

COUNT III
BREACH OF AGENCY DUTY

35

Pursuant to 28 C.F.R. § 25.5 Defendants will be responsible for ensuring the accuracy and validity of the data contained within the NCIS and will immediately correct any record determined to be invalid or incorrect notwithstanding automatically purging of records in the NCIS Index after they are on file for a prescribed period of time; and quality control checks in the form of periodic internal audits by FBI personnel to verify that the information provided to the NCIS Index remains valid and correct.

36

Contrary to law and contrary to Defendants' own procedures, Defendants failed to exercise the standards of care ensuring the accurate adding, canceling, or modifying of NCIS Index records supplied by Federal,

State and local government agencies, and quality control checks in the form of periodic internal audits by FBI personnel to verify that the information provided to the NCIS Index remains valid and correct.

37

Pursuant to law and Defendants' own procedures, Defendants owed Plaintiff a duty to protect him from this type of harm that resulted from Defendants' negligence, and that duty was breached in a manner of a continuing violation.

38

Defendants were in a position to correct false and defamatory statements concerning Plaintiff made to law enforcement officers, potential employers, and others, to Plaintiff's detriment.

39

Defendants had a duty not to present false statements of fact concerning Plaintiff to his detriment.

40

Defendants had a duty not to mislead or advise law enforcement officers, potential employers, and others, concerning Plaintiff.

41

Defendants breached this duty to Plaintiff to his detriment which was either nondiscretionary or unofficial conduct.

42

Defendants acted arbitrarily, capriciously, and contrary to law and contrary to their own procedures.

43

As a direct and proximate result of Defendants' breach of 28 C.F.R. § 25.5 duties, Plaintiff has suffered severe emotional distress, mental pain and suffering and adverse physical consequences.

44

As a direct and proximate result of Defendants' breach of 28 C.F.R. § 25.5 duties, Plaintiff has suffered physical pain and suffering.

45

As a direct and proximate result of Defendants' breach of 28 C.F.R. § 25.5 duties, Plaintiff has been subjected to public scorn, ridicule and pecuniary losses.

## COUNT IV
## NEGLIGENCE PER SE

46

Defendants had a legal duty in the exercise of public responsibilities to Plaintiff not to engage in nondiscretionary and unofficial conduct with law enforcement officers, potential employers, and others, to Plaintiff's detriment.   Defendants acted contrary to law and contrary to their own procedures in refusing to grant Plaintiff's permission to exercise fundamental protections to defend his home, family, or himself, on equal terms, as available to others, and to enjoy Equal Employment Opportunities.

47

Defendants' breach of said duty constitutes negligence per se.

48

As a direct and proximate result of Defendants' negligence per se, Plaintiff has suffered severe emotional distress, mental pain and suffering, and adverse physical consequences.

49

As a direct and proximate result of Defendants' negligence per se, Plaintiff has been subjected to public scorn, ridicule and pecuniary losses.

## COUNT V
## NEGLIGENCE

50

Defendants owed a duty to Plaintiff to exercise ordinary care under the circumstances within the course and scope of their employment.

51

Defendants breached this duty of care.

52

As a direct and proximate result of Defendants' negligence, Plaintiff has suffered severe emotional distress, mental pain and suffering, and adverse physical consequences.

53

As a direct and proximate result of Defendants' negligence, Plaintiff has been subjected to public scorn, ridicule and pecuniary losses.

## COUNT VI
## FRAUD

54

Defendants knowingly and intentionally made false representations of material fact to law enforcement officers, potential employers, and others, contrary to law and contrary to their own procedures, and to Plaintiff's detriment, by, among other things:

(a)  Representing that Plaintiff is a "potentially irresponsible and dangerous felon;"

(b)  Representing that Plaintiff would act in a manner dangerous to the public safety; and

(c)  Representing that granting the relief sought would be contrary to the public interest.

Defendants were complicit in classifying and portraying Plaintiff as such, absent his awareness, and a due process hearing to defend and

demonstrate his good moral character.  Defendants' portrait of Plaintiff was patently defamatory, patently false, foreseeable, and preventable.

55

As a direct and proximate result of Defendants' fraudulent representations, Plaintiff has suffered severe emotional distress, mental pain and suffering, and adverse physical consequences.

56

As a direct and proximate result of Defendants' fraudulent representations, Plaintiff has been subjected to public scorn, ridicule and pecuniary losses.

## COUNT VII
### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

57

Defendants intentionally exercised unofficial conduct and abused their position of power by representing false and defamatory statement concerning Plaintiff to law enforcement officers, potential employers, and others.  Said statement amounted to at least negligence and is actionable per

se because it ascribes to the Plaintiff a characteristic incompatible with the proper conduct of his 27 years of law abiding and respect for law and order.

58

Said statement diminishes the esteem in which a person is held, or excites adverse feelings or opinions against him.

59

Defendants physically impacted Plaintiff's past, present, and future by representing false and defamatory statements against Plaintiff on April 1, 2009, again on January 5, 2010, and again on March 12, 2010.

60

As a direct and proximate result of Defendants' unofficial conduct on April 1, 2009, again on January 5, 2010, and again on March 12, 2010, and contrary to 28 U.S.C. § 25.5, Plaintiff has suffered severe emotional distress, mental pain and suffering, and adverse physical consequences.

61

As a direct and proximate result of Defendants' unofficial conduct on April 1, 2009, January 5, 2010, and March 12, 2010, Plaintiff has been subjected to public scorn, ridicule and pecuniary losses.

## COUNT VIII
## NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

62

Defendants were negligent as described above and below in exercising unofficial conduct and abused their position of power by making false and defamatory statements concerning Plaintiff.

63

Defendants' unofficial conduct was extreme and outrageous and directly caused Plaintiff to suffer severe psychological and emotional distress.

64

Plaintiff has suffered and continues to suffer damages as a result of Defendants' unofficial conduct.

65

As a direct and proximate result of Defendants' unofficial conduct, Plaintiff has suffered severe emotional distress, mental pain and suffering, and adverse physical consequences.

66

As a direct and proximate result of Defendants' unofficial, Plaintiff has suffered physical pain and suffering.

67

As a direct and proximate result of Defendants' unofficial conduct, Plaintiff has been subjected to public scorn, ridicule and pecuniary losses.

COUNT IX
NEGLIGENT FAILURE TO WARN

68

Defendants, by an through their agents, servants and employees, kept Plaintiff under the shadow of his nullified conviction, and continued to stigmatize and classify him as an "irresponsible and dangerous felon" and by representing publicly the Defendants' classification to law enforcement officers, potential employers and others to Plaintiff's detriment.

69

Defendants knew, or should have known, that fundamental requisite of due process of law is the opportunity to be heard.  This right to be heard has little reality or worth unless one is informed that the matter is pending and can choose for himself whether to appear or default, acquiesce or contest.

70

Defendants knew or should have known that their action diminishes the safeguard of notice, affording an opportunity to be heard, before one is categorized as a "potentially irresponsible and dangerous felon."

71

Defendants knew, or should have known, that in the exercise of their unofficial conduct, such defamatory statement was outrageous in character and so extreme in degree to go beyond all possible bounds of decency because any law enforcement officer, government official and others acting on such statement or classification could have caused the unlawful taking of Plaintiff's life based on the Defendants' defamation.

72

Defendants knew, or should have known, the need for some form of pretermination hearing, recognized according to settled law, is evident from

a balancing of the competing interests at stake.   These are the private interests in retaining employment, and the severity of depriving a person of the means of livelihood by making false and defamatory statements concerning Plaintiff to law enforcement officers, potential employers, and others, and by continuing to stigmatize and classify Plaintiff as an "irresponsible and dangerous felon."

## COUNT X
## NEGLIGENT FAILURE TO INTERVENE

73

Defendants with supervisory power over the offending employees, by and through their agents, servants, and employees, intentionally exercised unofficial conduct and abused their position of power by allowing their offending employees to make false and defamatory statements concerning Plaintiff, and by categorizing Plaintiff as a "potentially irresponsible and dangerous felon."

74

Defendants with supervisory power over the offending employees, knew, or should have known, that Plaintiff has not been a convicted felon since May 1983, and the current year is 2010.

75

As a direct and proximate result of Respondeat superior's negligently failure to intervene to prevent said unofficial conduct, Plaintiff has suffered severe emotional distress, mental pain and suffering, and adverse physical consequences.

76

As a direct and proximate result Respondeat superior's negligence, Plaintiff has suffered physical pain and suffering.

77

As a direct and proximate result of Respondeat superior's negligence, Plaintiff has been subjected to public scorn, ridicule and pecuniary losses.

## COUNT XI
## NEGLIGENT FAILURE TO PROTECT

78

Defendants Respondeat superior allowed their agents, servants, and employees to assume an unfettered position of trust and authority as false and defamatory statements concerning Plaintiff were made to law enforcement officers, potential employers, and others to his detriment.

79

Plaintiff felony conviction was nullified more than 27 years ago.

80

Defendants' negligence was not only foreseeable, but also preventable. Nullifying Plaintiff's felony conviction on June 1, 1983 has the effect of wiping out the conviction so that Plaintiff could no longer lawfully be considered a convicted felon.

81

Defendants' negligence was the sole proximate cause of the damages Plaintiff incurred on April 1, 2009, again on January 5, 2010, and again on March 12, 2010, including the present filing of this Complaint, and Plaintiff's injuries could have been foreseen and prevented.

82

As a direct and proximate result of Defendants' negligence, Plaintiff has suffered severe emotional distress, mental pain and suffering, and adverse physical consequences.

83

As a direct and proximate result of Defendants' negligence, Plaintiff has suffered physical pain and suffering.

84

As a direct and proximate result Defendants' negligence, Plaintiff has been subjected to public scorn, ridicule and pecuniary losses.

## COUNT XII
## NEGLIGENT RETENTION

85

Defendants' 28 C.F.R. § 25.5 duties regarding validation and data integrity of records in the system.

(a) The FBI will be responsible for maintaining data integrity during all NICS operations that are managed and carried out by the FBI. This responsibility includes:

(1) Ensuring the accurate adding, canceling, or modifying of NCIS Index records supplied by Federal agencies;

(2) Automatically rejecting any attempted entry of records into the NCIS Index that contain detectable invalid data elements;

(3) Automatic purging of records in the NCIS Index after they are on file for a prescribed period of time; and

(4) Quality control checks in the form of periodic internal audits by FBI personnel to verify that the information provided to the NCIS Index remains valid and correct.

(b) Each data source will be responsible for ensuring the accuracy and validity of the data it provides to the NCIS Index and will immediately correct any record determined to be invalid or incorrect.

86

Contrary to law and contrary to Defendants' own procedures, Defendants physically and economically impacted Plaintiff by representing to law enforcement officers, potential employers, and others false and defamatory statement concerning Plaintiff to his detriment.

87

Defendants knew such defamatory communication would diminish the esteem in which a person is held or to excite adverse feelings or opinions against him was foreseeable.

88

Defendants knew, or should have known, that it is as much as unlawful as unreasonable to assert that Plaintiff who was employed in Law Enforcement to protect, and had access to a firearm in the performance of

his duties in the Commonwealth of Virginia; and adjudged and found to be of good moral character by the Commonwealth of Virginia's Department of Criminal Justice Services, is in reality so dangerous that any possession at all of a firearm would pose a significant threat to public safety.

89

Defendants with supervisory power over their agents, servants, and employees, knew, or should have known, that their offending employees were incompetent or otherwise unable to perform their job duties in an ordinary, reasonable, and lawful manner.

90

Defendants with supervisory power over their agents, servants, and employees were negligent in retaining their offending employees as public servants, as said Defendants knew, or should have known, that their offending employees had a propensity to diminish the esteem in which a person is held, or to excite adverse feelings or opinions against him made to law enforcement officers, potential employers, and others, to Plaintiff's detriment.

91

As a direct and proximate result Defendants with supervisory power's negligence, Plaintiff has suffered severe emotional distress, mental pain and suffering, and adverse physical consequences.

92

As a direct and proximate result of Defendants with supervisory power's negligence, Plaintiff has suffered physical pain and suffering.

93

As a direct and proximate result of Defendants with supervisory power's negligence, Plaintiff has been subjected to public scorn, ridicule and pecuniary losses.

COUNT XIII
NEGLIGENT FAILURE TO SUPERVISE

94

Defendants with supervisory power over the offending employees, by and through their agents, servants, and employees, negligently failed to supervise offending employees in the exercise of ordinary care of public responsibilities, as said Defendants knew, or should have known, that their

offending employees were incompetent or otherwise unable to perform their job duties in an ordinary, reasonable, and lawful manner.

95

Defendants with supervisory power over the offending employees, by and through their agents, servants, and employees, negligently failed to supervise Defendants' offending employees as public servants, as said Defendants knew, or should have known, that their offending employees had a propensity to diminish the esteem in which a person is held, or to excite adverse feelings or opinions against him made to law enforcement officers, potential employers, and others, to Plaintiff's detriment.

96

Defendants with supervisory power over the offending employees, by and through their agents, servants, and employees, actually knew of the propensity, had the power to end it, and failed to do so.

97

As a direct and proximate result of Defendants with supervisory power's negligence, Plaintiff has suffered severe emotional distress, mental pain and suffering, and adverse physical consequences.

98

As a direct and proximate result of Defendants with supervisory power's negligence, Plaintiff has suffered physical pain and suffering.

99

As a direct and proximate result of Defendants with supervisory power's negligence, Plaintiff has been subjected to public scorn, ridicule and pecuniary losses.

WHEREFORE, Plaintiff prays for the following relief.

(a)     That the Complaint be liberally construed to less stringent standards that formal pleading filed by bar members;

(b)     That process and summons issue against Defendants;

(c)     For trial by jury of six (6);

(d)     Declare Defendants' refusal to grant Plaintiff permission to exercise fundamental protections to defend his home, family, or himself to be unlawful;

(e)     Enjoin Defendants from continuing to refuse to grant Plaintiff permission to exercise fundamental protections to defend his home, family, or himself;

(f)     Declare Defendants' statements of fact that Plaintiff is a convicted felon and a "potentially irresponsible and dangerous person" to be defamatory;

(g)     Enjoin Defendants from continuing to classify Plaintiff as a convicted felon "potentially irresponsible and dangerous;"

(h)     That judgment for compensatory and special damages be entered against Defendants in an amount to be decided by a fair and impartial jury;

(i)     That Plaintiff be awarded all attorney's fees;

(j)     That Plaintiff be awarded all costs of Court;

(k)     That Plaintiff be awarded punitive damages in an amount to be determined by the enlightened conscience of a fair and impartial jury; and

(l)     That Plaintiff recover such other relief as may be just and proper under the facts and circumstances of this case.

Respectfully submitted this __1__ day of __November__ ,2010.

I solemnly affirm under the penalty of perjury and upon personal knowledge the contents of the foregoing affidavit are true.

Executed on __11-1-2010__

DATE                    DANIEL H. ROSS