## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **DANIEL H. ROSS** | * | |
| Plaintiff, | * | |
| v. | * | Civil No. **PJM 10-3090** |
| **FEDERAL BUREAU OF ALCOHOL, TOBACCO, AND FIREARMS, et al.** | * | |
| Defendants. | * | |

## OPINION

### I.

Daniel H. Ross, *pro se*, has sued the Federal Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATFE"), the Federal Bureau of Investigation ("FBI"), and "Unknown Officials" of both agencies (collectively, "Defendants"), asserting various claims arising out of the so-called "appearance" of a felony murder conviction on his record. Defendants have filed a Motion to Dismiss all counts, arguing that some fail to state a claim while, as to others, the Court lacks subject matter jurisdiction. [Paper No. 7]. Defendants' Motion to Dismiss the employment discrimination, state tort, and constitutional tort claims will be **GRANTED**; the Motion to Dismiss Ross's claim for erroneous denial of a firearm under the Gun Control Act of 1968 ("GCA"), 18 U.S.C. § 921 *et seq.*, will be **DENIED WITHOUT PREJUDICE**. Ross shall have twenty-one days leave to amend his claim as to the alleged denial of the firearm.

### II.

Ross was convicted of two crimes in North Carolina state court in the 1960s: a misdemeanor, in 1965, for assault, and a felony, in 1969, for the murder of his wife. After years

1

of fighting the murder conviction, which resulted in a life sentence, Ross was granted federal habeas corpus relief by the U.S. Court of Appeals for the Fourth Circuit. *See Ross v. Reed*, 704 F.2d 705 (4th Cir. 1983). The Fourth Circuit reversed Ross's murder conviction and remanded the case to the district court with instructions to enter a writ of habeas corpus unless Ross was retried within a reasonable time. *Id.* at 709. Ross was released from prison on June 1, 1983 and never retried. On appeal, the Supreme Court affirmed, noting that Ross's conviction had been "nullified." *See Reed v. Ross*, 468 U.S. 1, 21 (1984) (Rehnquist, J., dissenting).

Now, almost three decades after being released from prison and having had his murder conviction nullified, Ross alleges that he is suffering from continuing harm as a result of having the conviction on his record. His Complaint outlines three specific instances of such harm.

First, on April 1, 2009, he was informed by the Personnel Security Branch of the U.S. Environmental Protection Agency ("EPA") that a background check revealed the felony conviction. As a result, Ross was required to submit proof that the conviction had been nullified. It is unclear from Ross's Complaint whether he was employed by EPA at the time, or whether he was applying for a job at the agency. It is also unclear whether he submitted the required proof and whether he suffered any further consequences as a result of the background check.

Second, on March 11, 2010, Ross was informed that his request to receive a White House tour was denied following a Secret Service background check that revealed the felony conviction. Ross alleges that the Secret Service acquired this information from the FBI's National Instant Criminal Background Check System ("NICS"). He further alleges that the Secret Service offered him an opportunity to submit proof that he was not a convicted felon, but it is unclear whether Ross did so, or whether he eventually received a White House tour.

Finally, on January 5, 2010, Ross attempted to purchase a hunting rifle from a pawnbroker, who was a federal firearms licensee ("FFL").[1] Under § 922(t) of the GCA, FFLs are required to run a criminal background check on a prospective purchaser before they can transfer the firearm. This involves contacting the NICS database and awaiting a response, which can either be "Proceed," "Delayed," or "Denied." 28 C.F.R. § 25.6(c)(1)(iv). If the FFL receives a "Delayed" response, or does not receive a "Denied" response within three days of contacting the NICS database, the FFL may transfer the firearm to the purchaser. *See* 18 U.S.C. § 922(t)(1)(B)(ii); 28 C.F.R. 25.6(c)(1)(iv)(B) (where "the NICS has not yet responded with a 'Proceed' or 'Denied' response [after three business days], the FFL may transfer the firearm."). Ross alleges that the FFL denied his request to purchase the hunting rifle.

Believing the denial of his request to be in error, Ross appealed the decision to the FBI's Criminal Justice Information Services ("CJIS") Division. On July 12, 2010, the FBI sent him a letter stating that the denial was based on his felony conviction, which would have made the firearm transfer illegal under 18 U.S.C. § 922(g)(1), which prohibits anyone "who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year" from receiving a firearm. As Ross has pointed out, however, that section is limited by 18 U.S.C. § 921(a)(20), which exempts "[a]ny conviction which has been expunged, or set aside or for which a person has been pardoned or has had civil rights restored" from application of § 922(g)(1). Because he submitted proof that his felony conviction had been nullified in 1983, the FBI advised Ross that "the original prohibitive criteria have been resolved."

---

[1] An "FFL" is "a person licensed by the ATF[E] as a manufacturer, dealer, or importer of firearms." 28 C.F.R. § 25.2.

However, the FBI also informed Ross that a different aspect of his record presented "potentially prohibitive criteria" and that, accordingly, "any future firearm transactions [would] be subject to a delay." The FBI referenced 18 U.S.C. § 922(g)(9), which makes it unlawful for anyone "who has been convicted in any court of a misdemeanor crime of domestic violence" to possess a firearm. Though Ross's felony conviction had been recharacterized as "nullified," his remaining misdemeanor conviction for assault would violate § 922(g)(9) if it involved domestic violence. Because Ross's record did not specify the nature of the misdemeanor conviction,[2] the FBI noted that it "lack[ed] required criteria" to resolve Ross's eligibility to possess a firearm and that the material Ross submitted was "insufficient" to settle the matter.

Eventually, the FBI identified the agency responsible for submitting to it information as to Ross's criminal record, namely North Carolina's State Bureau of Investigation ("SBI"). Ross was invited to contact the SBI to update his record. It is unclear whether Ross followed the FBI's advice. Nonetheless, Defendants claim that this communication from the FBI constituted its final decision in the matter, and represents a "delay," instead of a denial, of Ross's request to purchase a firearm.

On February 12, 2011, after this Complaint was filed, and apparently in response to Defendants' Motion to Dismiss, Ross attempted to purchase a firearm. He alleges that the firearm was not transferred to him on that day, and that three days later, when he inquired of the FFL why not, the FFL informed him that the FBI had denied his transfer. In support of this allegation, Ross has provided the transaction number of his firearm transfer request, but has provided no other documentary evidence demonstrating that he was, in fact, denied a firearm

---

[2] Defendants, in their Motion to Dismiss, allege that the misdemeanor conviction appeared on Ross's record as an "assault on female" charge. However, they have submitted no evidence, documentary or otherwise, in support of this assertion.

4

after the FBI informed him that his future requests would only be subject to delay. In their Reply Memorandum, Defendants did not respond to this allegation, which appears for the first time in Ross's Response. Defendants' position as to this allegation is thus unclear, but presumably the FBI does not agree that the gun request was denied.

## III.

Defendants' Motion to Dismiss is brought pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6). Under Rule 12(b)(1), a party may seek dismissal for "lack of subject-matter jurisdiction." Fed. R. Civ. P. 12(b)(1). "The plaintiff has the burden of proving that subject matter jurisdiction exists." *Evans v. B.F. Perkins Co.*, 166 F.3d 642, 647 (4th Cir. 1999). "When a defendant challenges subject matter jurisdiction pursuant to Rule 12(b)(1), the district court is to regard the pleadings as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." *Id.* (citation and quotation marks omitted). "The district court should grant the Rule 12(b)(1) motion to dismiss only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." *Id.* (citation and quotation marks omitted).

Rule 12(b)(6) governs dismissal of a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "[T]he purpose of Rule 12(b)(6) is to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006) (citation and quotation marks omitted). "[I]n evaluating a Rule 12(b)(6) motion to dismiss, a court accepts all well-pled facts as true and construes these facts in the light most favorable to the plaintiff in weighing the legal sufficiency of the complaint." *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 255 (4th Cir. 2009). The court will also "draw[ ] all

reasonable factual inferences from those facts in the plaintiff's favor . . . ." *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999). But "legal conclusions, elements of a cause of action, and bare assertions devoid of further factual enhancement fail to constitute well-pled facts . . . ." *Nemet Chevrolet*, 591 F.3d at 255. "[A] complaint must contain 'sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Id*. (quoting *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009)) (quotation marks omitted). "Facial plausibility is established once the factual content of a complaint 'allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Id*. at 256 (quoting *Iqbal*, 129 S. Ct. at 1949). "[T]he complaint's factual allegations must produce an inference of liability strong enough to nudge the plaintiff's claims 'across the line from conceivable to plausible.'" *Id*. (quoting *Iqbal*, 129 S. Ct. at 1952).

Moreover, a plaintiff proceeding *pro se* is entitled to a "less stringent standard" than is a lawyer, and the court must construe his claims liberally, no matter how "inartfully pleaded." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)); *see also Brown v. N.C. Dep't of Corr.*, 612 F.3d 720, 722 (4th Cir. 2010) (observing that liberal construction of a complaint is particularly appropriate where a *pro se* plaintiff alleges civil rights violations).

### IV.

The Court considers Ross's claims for A) violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*; B) various state tort claims; C) various constitutional tort claims; and D) violations of his constitutional and statutory rights as a result of being denied the purchase of a firearm under § 922(t) of the GCA.

6

**A.**

As to the alleged employment discrimination in violation of Title VII, Ross does not identify the specific employment opportunity, employer, or employment practice that involved the alleged discrimination. He notes only that he "enjoys the right to Equal Employment Opportunities."

But "[t]he ultimate question in every employment discrimination case involving a claim of disparate treatment is whether the plaintiff was the victim of intentional discrimination." *See Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 153 (2000). The plaintiff has the burden of proving that a protected trait, such as race, color, sex, religion, or national origin, "actually motivated the employer's decision." *See Hazen Paper Co. v. Biggins*, 507 U.S. 604, 610 (1993).

Ross does not contend that any of the Defendants have ever served as his employer, or that he ever applied for, and was denied, a job with any of the Defendant agencies. From all that appears, he is generally unhappy with the appearance of his nullified conviction on his record, describing, for example, an incident with the EPA where he was forced to explain the felony conviction as a result of a background investigation.[3] But Ross has not sued the EPA, nor has he alleged an adverse employment action other than being required to submit proof that his conviction was nullified.

Additionally, even if Ross were the victim of employment discrimination as a result of Defendants' actions, he has not pled any facts suggesting in any way that an illegal purpose was involved. While, as an African-American man, Ross is a member of a protected class, his

---

[3] As noted, *supra*, it is unclear whether Ross was employed by the EPA at the time or was seeking employment.

Complaint at best alleges that discrimination occurred because of his status as a former felon. Title VII, however, does not establish a cause of action for employment discrimination based on the accuracy *vel non* of an individual's criminal record.

Because he cannot show that any Defendant discriminated against him in an employment context, Ross has failed to allege a *prima facie* case of discrimination under Title VII.

**B.**

Ross alleges several of what purport to be various state tort claims,[4] which essentially boil down to a claim that Defendants breached a duty to maintain accurate information in the NICS database, as a result of which his nullified conviction continued to crop up during background investigations, causing him to suffer adverse consequences. He cites two unsuccessful attempts to purchase a gun, an unsuccessful attempt to schedule a White House tour, and a request from a federal agency to explain the appearance of the felony conviction on his record.

The Court agrees with Defendants that the state court claims cannot survive.

To begin, all of the tort claims are subsumed by the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 2671 *et seq.*, which provides an exclusive remedy for all tort suits against the government and its employees who commit tortious acts in the course of their employment. *See* 28 U.S.C. § 2679(b)(1) ("The remedy against the United States . . . is exclusive . . . ."); *United States v. Smith*, 499 U.S. 160, 166 (1991) ("[T]he FTCA [is] the exclusive mode of recovery for

---

[4] Ross alleges breach of agency duty, negligence per se, negligence, fraud, intentional infliction of emotional distress, negligent infliction of emotional distress, negligent failure to warn, negligent failure to intervene, negligent failure to protect, negligent retention, and negligent failure to supervise. In consequence, Ross says he has suffered emotional distress, mental pain and suffering, adverse physical sequelae, physical pain and suffering, reputational harm, and economic losses.

8

the tort of a Government employee even when the FTCA itself precludes Government liability.").

Second, under the FTCA, neither the FBI nor the ATFE, as federal agencies, can be sued for torts. *See* 28 U.S.C. § 2679(a) ("The authority of any federal agency to sue and be sued in its own name shall not be construed to authorize suits against such federal agency on claims which are cognizable under section 1346(b) of this title . . . ."); *Garcia v. United States*, 709 F. Supp. 2d 1133, 1138 (D.N.M. 2010) ("Congress has explicitly provided . . . that the only proper party in an action under the FTCA is the United States."); *Painter v. FBI*, 537 F. Supp. 232, 236 (N.D. Ga. 1982) ("The FBI may not be sued *eo nomine*."), *aff'd*, 694 F.2d 255 (11th Cir. 1982). Thus, none of the Defendants are proper parties under these claims.

Third, construing the Complaint liberally to be against the United States, which is the only proper party under the FTCA, the claims would still be barred by the doctrine of sovereign immunity. "It is axiomatic that the United States may not be sued without its consent and that the existence of consent is a prerequisite for jurisdiction." *United States v. Mitchell*, 463 U.S. 206, 212 (1983). Moreover, "[a]bsent a waiver, sovereign immunity shields the Federal Government and its agencies from suit." *FDIC. v. Meyer*, 510 U.S. 471, 475 (1994). "[I]t is the plaintiff's burden to show that an unequivocal waiver of sovereign immunity exists and that none of the statute's waiver exceptions apply to his particular claim." *Welch v. United States*, 409 F.3d 646, 651 (4th Cir. 2005).

Indeed, he cannot do so. The FTCA provides that no claim may be brought against the United States "unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing . . . ." 28 U.S.C. §

2675(a). This requirement may not be waived. *Henderson v. United States*, 785 F.2d 121, 123 (4th Cir. 1986) ("It is well-settled that the requirement of filing an administrative claim is jurisdictional and may not be waived."). Since Ross does not allege that he filed an administrative claim and since Defendants have provided affidavits from employees of both the FBI and ATFE swearing that he has not in fact done so, Ross has not met the exhaustion of remedies requirement of the FTCA, or otherwise shown a waiver of sovereign immunity by the United States. Accordingly, the Court lacks subject matter jurisdiction over Ross's state tort claims.

## C.

In addition to state tort claims, Ross alleges violations of various federal constitutional rights, including those supposedly established by the Second, Fifth, Ninth, Tenth, and Fourteenth Amendments, and the Commerce Clause. U.S. CONST. art. I, § 8, cl. 3, amends. II, V, IX, X, XIV. Essentially Ross is arguing that Defendants violated all these purported rights when they denied him the ability to purchase a gun.

Defendants correctly argue that these claims must also go out by reason of sovereign immunity. *See Reinbold v. Evers*, 187 F.3d 348, 355 n.7 (4th Cir. 1999) ("[T]he United States has not waived sovereign immunity in suits claiming constitutional torts . . . ."). As in claims covered by the FTCA, the plaintiff has the burden to demonstrate a waiver of sovereign immunity before he can sue the United States for constitutional tort claims. *See Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). Because Ross has not demonstrated such a waiver, his constitutional tort claims against the FBI and ATFE, construed liberally to be against

the United States, must be dismissed for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1).

In addition to the FBI and ATFE as agencies, Ross has also sued "Unknown Officials" of the agencies. He claims the Court has subject matter jurisdiction over the constitutional torts committed by them, based on *Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971). In *Bivens*, the Supreme Court held that individual federal agents were liable for damages based on constitutional violations that occurred in the course of their work. *Id.* at 397. Here, Ross argues that individual agents of the FBI and ATFE are liable for damages caused by reason of their provision of inaccurate information in the NCIS system. However, as Defendants correctly point out that, to survive a Motion to Dismiss in a *Bivens* claim, a plaintiff must allege specific facts against each individual defendant, establishing that each defendant's conduct actually caused a constitutional violation. *Iqbal*, 129 S. Ct. at 1948 ("[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."). Ross has failed to identify any individual agent of the FBI or ATFE, or any specific action taken by an individual agent, that purportedly violated his constitutional rights. His claim against the "Unknown Officials" of the FBI and ATFE is therefore subject to dismissal for failure to state a claim under Fed. R. Civ. P. 12(b)(6).

**D.**

Finally, Ross alleges that he has been denied a firearm under § 922(t) of the GCA. He argues 1) that the GCA is unconstitutional, or, in the alternative, 2) that he was improperly denied a firearm according to the terms of the GCA itself.

**1.**

Ross raises constitutional challenges to the GCA insofar as it regulates gun ownership in general, and specifically as to its provision denying gun purchases to individuals previously convicted of a felony, 18 U.S.C. § 922(g)(1), and to those previously convicted of a misdemeanor of domestic violence, 18 U.S.C. § 922(g)(9).

His first challenge is that the GCA violates his Second Amendment right to bear arms. U.S. CONST. amend. II.

The right to bear arms was recently held to be an individual right in *District of Columbia v. Heller*. 554 U.S. 570, 595 (2008) ("There seems to us no doubt, on the basis of both text and history, that the Second Amendment conferred an individual right to keep and bear arms."). However, the Supreme Court explicitly noted that the right is not unlimited, but is properly regulated by certain "longstanding prohibitions," such as those against "the possession of firearms by felons and the mentally ill . . . or laws imposing conditions and qualifications on the commercial sale of arms." *Id.* at 626-27. Based on this language, many courts since *Heller* have upheld § 922(g)(1) against Second Amendment challenges. *See, e.g.*, *United States v. Brunson*, 292 F. App'x 259, 261 (4th Cir. 2008) (dismissing a Second Amendment challenge to § 922(g)(1) as "meritless" under *Heller*); *United States v. Lunsford*, 2011 WL 145195, at *2 (S.D. W.Va. Jan. 18, 2011) ("[Section] 922(g)(1) falls squarely within the list of presumptively lawful measures announced in Heller"); *United States v. Mohamadi*, 2010 WL 2490960, at *2 (E.D. Va. June 17, 2010) (collecting post-*Heller* cases upholding § 922(g)(1)). The Court agrees that Ross's Second Amendment challenge to any restriction of access to guns is without foundation.

With respect to the provision of § 922(g)(9) restricting firearm transfers to individuals convicted of a misdemeanor involving domestic violence, Ross raises a question the Fourth Circuit recently avoided answering. In *United States v. Chester*, the court vacated a West Virginia district court decision upholding § 922(g)(9) as a "presumptively lawful regulatory measure" under *Heller*. 628 F.3d 673, 683 (4th Cir. 2010). The Fourth Circuit decided that the district court's approach, which upheld § 922(g)(9) by analogizing it to § 922(g)(1), was inappropriate in light of *Heller's* requirement that courts must use a heightened standard of scrutiny to review laws that potentially violate the Second Amendment. *Id.* at 680. Instead, the Fourth Circuit adopted a two-part inquiry: 1) Does the challenged regulation "burden[] or regulate[] conduct that comes within the scope of the Second Amendment . . ."; and, if so, 2) under an intermediate scrutiny standard, is there a "'reasonable fit' between the challenged regulation and a 'substantial government objective.'" *Id.* at 680, 683 (quoting *Bd. of Trs. of State Univ. of N.Y. v. Fox*, 492 U.S. 469, 480 (1989)). Holding that the Government bears the burden to demonstrate this "reasonable fit," and that the Government had not, in that case, had an opportunity to offer any evidence in support of § 922(g)(9)'s constitutionality under this new standard of review, the Fourth Circuit remanded the case to the district court to determine whether the statute was constitutional under the two-part test. *Id.* at 683. The district court has yet to rule on remand.

Though the constitutionality of § 922(g)(9), in the wake of *Chester*, remains unresolved in the Fourth Circuit, it has been widely upheld in several other circuits. *See, e.g.*, *United States v. Booker*, 2011 WL 1631947, at *12 (1st Cir. May 2, 2011) (upholding § 922(g)(9) under intermediate scrutiny review); *United States v. Skoien*, 614 F.3d 638, 641-42 (7th Cir. 2010) (same); *United States v. White*, 593 F.3d 1199, 1206 (11th Cir. 2010) (upholding § 922(g)(9) as

"presumptively lawful" under *Heller*). Additionally, many district courts in the Fourth Circuit have upheld § 922(g)(9) under intermediate scrutiny review. *See, e.g.*, *United States v. Smith*, 742 F. Supp. 2d 855, 870 (S.D. W.Va. 2010); *United States v. Tooley*, 717 F. Supp. 2d 580, 598 (S.D. W.Va 2010); *United States v. Brown*, 715 F. Supp. 2d 688, 698 (E.D. Va. 2010); *United States v. Walker*, 709 F. Supp. 2d 460, 467 (E.D. Va. 2010). This Court, joining the majority view, also upholds § 922(g)(9) against a Second Amendment challenge.

Ross also argues that the GCA, by violating his Second Amendment right to bear arms, violates the Ninth Amendment, which provides that "enumeration in the Constitution of certain rights shall not be construed to deny or disparage others retained by the people." U.S. CONST. amend. IX. The Second Amendment aside, Ross's Ninth Amendment challenge is unpersuasive: the Court holds, as have other courts, that the Ninth Amendment does not establish an individual right to bear arms. *See United States v. Finnell*, 256 F. Supp. 2d 493, 498 (E.D. Va. 2003) ("[C]ircuit courts across the country have consistently held that the Ninth Amendment does not impinge upon Congress' authority to restrict firearm ownership, as it has done through the enactment of § 922(g)(9).").

Ross proceeds to argue that the GCA violates the Commerce Clause of the Constitution. U.S. Const. art. 1, § 8, cl. 3. Related to this claim, he argues that the GCA violates the Tenth Amendment. U.S. CONST. amend. X. The Court rejects both of these challenges. Courts have consistently upheld the GCA, and § 922(g) in particular, as a legitimate exercise of Congress's Commerce Clause power. *See, e.g.*, *United States v. Morse*, 97 F. App'x 430, 431 (4th Cir. 2004) ("[Section] 922(g) is a valid exercise of Congress' power under the Commerce Clause."); *United States v. Bostic*, 168 F.3d 718, 723-24 (4th Cir. 1999) ("Congress acted within its authority under the Commerce Clause in enacting Section 922(g)(8)."). Moreover, because § 922(g) has been

deemed a valid exercise of Congress's Commerce Clause power, it does not violate the Tenth Amendment. *See, e.g.*, *New York v. United States*, 505 U.S. 144, 156 (1992) ("If a power is delegated to Congress in the Constitution, the Tenth Amendment expressly disclaims any reservation of that power to the States . . . ."); *Gregory v. Ashcroft*, 501 U.S. 452, 460 (1991) ("As long as it is acting within the powers granted it under the Constitution, Congress may impose its will on the States."). Multiple circuits have specifically upheld §§ 922(g)(1) and (9) under this rationale. *See, e.g.*, *United States v. Parker*, 371 F. App'x 749, 750 (9th Cir. 2010) ("Congress's regulation of firearm possession by felons is allowed under the commerce clause, and therefore, does not violate the Tenth Amendment"); *United States v. Darrington*, 351 F.3d 632, 634 (5th Cir. 2003) (holding that § 922(g)(1), as a valid exercise of Commerce Clause authority, does not violate the Tenth Amendment); *United States v. Lewis*, 236 F.3d 948, 950 (8th Cir. 2001) ("Our holding that [§ 922(g)(9)] is within the commerce power suffices also to dispose of defendant's Tenth Amendment argument."); *cf. Bostic*, 168 F.3d at 724 (holding that § 922(g)(8) does not violate the Tenth Amendment anti-commandeering principle as outlined in *Printz v. United States*, 521 U.S. 898 (1997)). This Court is in accord with those decisions.

Ross next argues that the GCA violates the Privileges and Immunities Clause of the Fourteenth Amendment. U.S. CONST. amend. 14, § 1. However, as Defendants point out, the Supreme Court recently rejected a claim that the Privileges and Immunities Clause supports a right to bear arms. *See McDonald v. City of Chi.*, 130 S. Ct. 3020, 3030-31 (2010) (rejecting an attempt to enforce the right to bear arms against the states through the Privileges and Immunities Clause).

Finally, Ross argues that the GCA violates the Due Process Clause of the Fifth Amendment, U.S. CONST. amend. V, asserting that there is no rational basis to deny firearms to

15

both violent and non-violent felons, as § 922(g)(1) attempts to do. The merits of this argument aside, however, Ross lacks standing to challenge § 922(g)(1), because he was purportedly denied a firearm under a different part of the statue, namely § 922(g)(9), which restricts firearm possession to those convicted of a misdemeanor of domestic violence. In any event, multiple circuits, including the Fourth Circuit, have upheld §§ 922(g)(1) and (9) against Fifth Amendment Due Process challenges. *See, e.g.*, *United States v. Vongxay*, 594 F.3d 1111, 1119 (9th Cir. 2010) (upholding § 922(g)(1)); *United States v. Wilson*, 118 F. App'x 974, 977 (7th Cir. 2004) (same); *United States v. Lewis*, 236 F.3d 948, 949 (8th Cir. 2001) (upholding § 922(g)(9)); *United States v. Mitchell*, 209 F.3d 319, 323 (4th Cir. 2000) (same). This Court, following Fourth Circuit precedent, rejects the Due Process Clause challenge.

Since none of Ross's constitutional challenges to § 922(g) have merit, they will all be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim.

**2.**

Ross claims that the Government's alleged "denial" of his request to purchase a handgun violated 18 U.S.C. § 921(a)(20) and 28 C.F.R. § 25.5. However, as Defendants note, neither the statute nor the regulation establish the remedy for someone improperly denied a gun under the GCA. What Ross presumably has in mind is to allege a violation of 18 U.S.C. § 925A, the provision of the GCA that establishes a private right of action for "[a]ny person denied a firearm" under the GCA's background check provision (Section 922(t)).

Under § 925A, an individual may bring an action for improper denial of a firearm if that person 1) was subject to "the provision of erroneous information relating to the person," or, 2) "was not prohibited from receipt of a firearm pursuant to" § 922(g) or (n). 18 U.S.C. §§

925A(1)-(2). The action may be brought against the "State or political subdivision responsible for providing the erroneous information, or responsible for denying the transfer, or against the United States . . . ." 18 U.S.C. § 925A. Remedies, however, are limited to "an order directing that the erroneous information be corrected or that the transfer be approved," but the court "may allow the prevailing party a reasonable attorney's fee as part of the costs." *Id*.

Notably, the statute only provides a remedy for an improper "denial." If a request to purchase a firearm is merely subject to a delay, whether proper or not, the statute allows the sale to proceed if the FBI has not denied the request within three business days. 18 U.S.C. § 922(t)(1)(B)(ii). In that event, the subsequent sale of the firearm appears to be at the discretion of the FFL. *See* 28 C.F.R. 25.6(c)(1)(iv)(B) (where "the NICS has not yet responded with a 'Proceed' or 'Denied' response [after three business days], the FFL *may* transfer the firearm" (emphasis added)). Other than "Delayed" or "Denied," the only other response the NICS is authorized to give to the FFL is "Proceed." 28 C.F.R. 25.6(c)(1)(iv). Thus, for Ross to state a claim against Defendants under § 925A, he must demonstrate that the NICS improperly provided a "Denied" response.

To review his claimed improper denials, Ross alleges that this occurred on two separate occasions. The first, on January 5, 2010, is referenced in Ross's Complaint, where he alleges that he attempted to purchase a hunting rifle but was denied the purchase after the FFL ran a background check. Ross appealed that denial to the FBI's CJIS division. In response, the FBI sent him a letter acknowledging the denial and informing him that the erroneous appearance of his nullified felony conviction in the NICS database had been corrected. At the same time, however, the FBI informed Ross that the second conviction on his record, independent of the nullified felony conviction, i.e. the misdemeanor conviction possibly involving domestic

violence, presented "potentially prohibitive criteria" that would subject consideration of his request to future delays. The FBI recommended that Ross contact North Carolina's SBI to correct any errors in his record or clarify the conviction. It is unclear whether Ross ever contacted the SBI, although presumably he did not.

As Ross's Complaint stands, as opposed to his subsequent pleadings in the case, it does not allege that Ross has been denied a firearm since the FBI told him that it corrected the felony conviction in the NICS system or that it was delaying its response presumably based on the misdemeanor conviction that may have involved domestic violence. But in his Response to Defendants' Motion to Dismiss, Ross claims that a second denial of purchase occurred on February 12, 2011, after Defendants filed that Motion to Dismiss in this case. He alleges that his request was initially delayed due to a background check, and that three days after his initial attempt, he was told by the FFL that the FBI had in fact "denied" the firearm transfer. The question of just what the FBI did do in the case thus remains open. Accordingly, taking Ross's *pro se* status into account, the Court will grant him leave to submit an Amended Complaint that sets out what he contends are the more recent facts of his case.

Once Ross amends his complaint, Defendants should file an appropriate response indicating, at a minimum, whether 1) one or more Defendants have in fact "denied" Ross a firearm; 2) if they have, the reason or reasons for the denial; 3) if Defendants contend they are merely "delaying" the decision, why they are delaying the decision; 4) if they are delaying the decision, why the delay has taken the length of time that it has; 5) whether and why Defendants may feel that any future delay is necessary; and 6) in sum, why Defendants may otherwise take the position that Ross should be denied access to a firearm.

## V.

For the foregoing reasons, Defendants' Motion to Dismiss will be **GRANTED WITH PREJUDICE** as to Ross's claim under Title VII and his various state and constitutional tort claims.

The Motion to Dismiss Ross's claim under § 925A of the GCA is **DENIED WITHOUT PREJUDICE** and Ross shall have twenty-one days leave to file an Amended Complaint. The Amended Complaint shall be restricted to Ross's § 925A claim, but should include factual allegations regarding any alleged denial of firearm transfers, including the February 2011 denial Ross alleges in his Response to Defendants' Motion to Dismiss. Defendants will then have twenty-one days to file an appropriate response.

A separate order will be entered.

                                                                                      **/s/**
                                                      **PETER J. MESSITTE**
                                  **UNITED STATES DISTRICT JUDGE**

**August 4, 2011**