**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

DANIEL H. ROSS,         )
                               )
      Plaintiff,          )
                               )
   v.                     )     Case No. 8:10-cv-3090-PJM
                               )
FEDERAL BUREAU OF ALCOHOL,   )
 TOBACCO, AND FIREARMS, *et al.*,   )
                               )
      Defendants.      )
                               )

**MEMORANDUM IN SUPPORT OF**
**MOTION TO DISMISS AMENDED COMPLAINT**

Defendants, the Federal Bureau of Investigation ("FBI"), the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF"), former ATF Acting Director Kenneth E. Melson, ATF Acting Deputy Director William J. Hoover, Special Agent Macy, FBI Deputy Director Timothy P. Murphy, and Daniel D. Roberts, Assistant Director of FBI's Criminal Justice Information Services ("CJIS") Division, by and through undersigned counsel, Rod J. Rosenstein, United States Attorney for the District of Maryland, and Neil R. White, Assistant United States Attorney for said District, respectfully submit this Memorandum in support of their motion to dismiss Plaintiff's Amended Complaint.

## I.  INTRODUCTION

On August 4, 2011, this Court granted FBI's and ATF's motion and dismissed, with prejudice, all of the constitutional, employment discrimination, common law tort, and constitutional tort claims actually advanced by Plaintiff, Daniel Ross, in this action.  Docket No. 13, at 19; Docket No. 14.  In so ruling, the Court upheld the constitutionality of 18 U.S.C. § 922(g)(9), which makes it unlawful for any person "who has been convicted in any court of a misdemeanor crime of domestic

violence" to possess or receive a firearm.  Docket No. 13, at 14 ("[t]his Court, joining the majority

view, also upholds § 922(g)(9) against a Second Amendment challenge."); *id.* (holding that the Ninth

Amendment does not establish an individual right to bear arms); *id.* at 14-15 (rejecting Plaintiff's

Commerce Clause and Tenth Amendment challenges to the statute); *id.* at 15 (rejecting Privileges

and Immunities Clause challenge); and *id.* at 15-16 (rejecting Fifth Amendment Due Process Clause

challenge to § 922(g)(9)).

In recognition of Plaintiff's self-represented status, however, the Court permitted him 21 days

within which to amend his complaint by adding allegations concerning an attempted firearms

purchase after he filed his initial Complaint for the sole purpose of attempting to state a cause of

action for the "erroneous denial" of a firearm under 18 U.S.C. § 925A.  *Id.* at 19.

In response to the Court's previous ruling, Plaintiff filed an Amended Complaint on August

15, 2011.  Docket No. 16.  Rather than heeding the Court's directive regarding the limited scope of

any amendment, Plaintiff has:  (1) added five individual defendants apparently named in their official

capacities;  (2) repeated several of his previously-rejected Constitutional claims, including his Fifth

Amendment challenge; and (3) added a challenge to § 922(g)(9) under the Eighth Amendment.  *Id.*

Plaintiff did include in his Amended Complaint a single paragraph describing his attempted purchase

on February 12, 2011 of "a firearm for self-defense and hunting purposes" from a pawn shop in

White Plains, Maryland.  *Id.* at ¶ 4.  Plaintiff alleges that the firearm was not transferred to him on

that day, and that three days later, the Federal Firearms Licensee ("FFL") pawnbroker advised him

that the request for transfer was denied.  *Id.*; *see also* Docket No. 16-1.

As demonstrated below, insofar as the Court permits Plaintiff's Amended Complaint beyond

a cause of action under § 925A, all claims not previously dismissed with prejudice should be

dismissed.   There has been no waiver of sovereign immunity to permit his claims against the defendants named as individuals, requiring dismissal under Rule 12(b)(1), but even if construed as renewed *Bivens* claims, he fails to plead plausible claims for relief against the named defendants. With respect to his new Eighth Amendment claim, it should be dismissed under Rule 12(b)(6) as failing to state a claim upon which relief may be granted.

Plaintiff also fails to state a cause of action against the United States under § 925A.  By its express terms, the statute only provides a remedy for denied transactions:  (1) based upon "the provision of <u>erroneous information</u>"; or (2) by a person "who was <u>not prohibited</u> from receipt of a firearm" under § 922(g) or (t).  18 U.S.C. § 925A (underscoring supplied).  Plaintiff's allegations in this case cannot state plausible claims for relief under either statutory criteria.

As established below and by the detailed declaration annexed hereto, the final disposition of both of Plaintiff's requests for a firearms transfer was to be placed in an "open" or "delayed" status. Moreover, unless and until information on his 1965 "Assault on Female" arrest is amended, modified, or deleted <u>by the North Carolina State Bureau of Investigation</u> ("SBI") – the agency responsible for submitting the information to CJIS – Plaintiff's future requests for authorization to purchase firearms will continue to be "delayed."  *See* 18 U.S.C. § 922(t)(1)(B)(ii); and 28 C.F.R. § 25.6(c)(1)(iv)(B).[1]  This is so because it is impossible to tell based on the information submitted by the North Carolina SBI whether the disposition of Plaintiff's 1965 arrest for "Assault on Female" places him within the ambit of § 922(g)(9).[2]

---

[1]According to the regulations, "*Delayed* means the response given to the FFL indicating that the transaction is in an "Open" status and that more research is required prior to a NICS "Proceed" or "Denied" response."  28 C.F.R. § 25.2.

[2]*See* Docket No. 13, at 8-9 (discussing history and interpretation of § 922(g)(9)); *see also, e.g., Eibler v. ATF*, 311 F. Supp. 2d 618 (N.D. Ohio 2004) (a § 925A case finding simple assault

Even if Plaintiff could show that future attempted purchases will be "denied," as opposed to "delayed," he cannot state a cause of action against the United States under § 925A because: (1) no federal entity has provided any "erroneous information" to anyone; and (2) Plaintiff has not shown and cannot show that he is not prohibited under § 922(g)(9) from receiving a firearm in view of his 1965 arrest for Assault on Female.

As stated repeatedly in the briefing on Plaintiff's original complaint, if Plaintiff genuinely believes he is entitled to possess and receive a firearm under the Gun Control Act, his remedy is to follow the advice he has been given since July 2010 to present information about the "Assault on Female" arrest to the North Carolina SBI, or create a "Voluntary Appeal File" with FBI. *See* 28 C.F.R. § 25.10. And if the evidence demonstrates that it should not be deemed "a misdemeanor crime of domestic violence," as that phrase is used in § 922(g)(9) and defined in § 921(a)(33), the information submitted by the SBI to NICS should be corrected or clarified and, barring any other prohibitive criteria, Plaintiff could be cleared for a firearms transfer.

## II. <u>STATEMENT OF FACTS</u>

### A. GENERAL BACKGROUND

As explained in FBI's and ATF's initial motion papers, the Gun Control Act of 1968 ("GCA"), as amended by the Brady Handgun Violence Protection Act of 1993, requires background checks of persons attempting to purchase firearms in order to prevent firearm purchases by individuals whom the GCA or state law bars from possessing firearms. The Brady Act directed the Attorney General to establish and operate a nationwide background check system that licensed firearms dealers could contact, by phone or electronically, to be informed whether information in the

---

conviction where the victim and the plaintiff were involved in a domestic relationship, though not living together, to be prohibitive of firearms transfer under § 922(g)(9)).

system indicates that transfer of a firearm to a particular individual would be prohibited.  Pursuant to this directive, the Attorney General established the National Instant Criminal Background Check System ("NICS"), 28 C.F.R. § 25.1, *et seq.*, and assigned management of NICS to the FBI's CJIS division.  28 C.F.R. §§ 0.85, 25.3.  Guidelines pertaining to the establishment, maintenance, and use of the NICS, which became operational on November 30, 1998, are set forth in 28 C.F.R. §§ 25.1 through 25.11.  *See* Exhibit 1 (Declaration of Monica Hamner), at ¶ 2.

**B.       BACKGROUND CHECK PROCESS FOR PROSPECTIVE FIREARMS TRANSFERS IN MARYLAND**

Under 28 C.F.R. § 25.6 (b) and (d), NICS checks may be conducted by either CJIS or a state or local law enforcement agency serving as an intermediary between an FFL and FBI.  In Maryland, FFLs are required to contact the NICS directly for a background check prior to the transfer of any long gun.  *Id.* at ¶ 3.  The NICS searches three electronic databases containing records, which may reveal information demonstrating the existence of state and federal records prohibiting receipt or possession of firearms:  (1) the Interstate Identification Index ("III"), which contains criminal history records regarding more than 60 million individuals; (2) the National Crime Information Center ("NCIC"), which contains more than 4.8 million records regarding wanted persons, protection orders, deported felons and other matters; and (3) the NICS Index, which contains over 6.4 million records regarding individuals subject to federal firearm prohibitions.  *Id.* at ¶ 4.

Maryland FFLs are required to contact the NICS by telephone or via the Internet in order to initiate a background check for long guns.  When the NICS receives a request from an FFL for a NICS check, the FFL must provide the NICS with, among other things, personal identifying information regarding the prospective transferee, including the transferee's name, date of birth, gender, race, state of purchase, state of residence, place of birth, and country of citizenship.  The FFL

must also provide the NICS with the type(s) of firearm which is to be transferred (handgun, long gun, or other) and identify whether the transaction is a sale or pawn. *Id.* at ¶ 6.

If the potential purchaser's name is electronically matched with a record contained in any of the three databases or the prospective purchaser has claimed non-U.S. citizenship, the NICS Contracted Call Center will provide the FFL with a unique, electronically-generated transaction number (i.e., NICS Transaction Number [NTN]).  The NICS Contracted Call Center will explain to the FFL that the status of the transaction is still being determined and the FFL will be transferred to the NICS Section. The NICS Section will perform a cursory review in an attempt to complete the transaction while on the telephone with the FFL. If the NICS Section is unable to complete the transaction, the NICS Section will inform the FFL that the transaction must be delayed pending further research.  If the NICS Section is unable to determine whether a delayed transaction should be denied within three business days of the initiation of a background check, the FFL is not prohibited from transferring the firearm, pursuant to 18 U.S.C. § 922(t)(1). *Id.* at ¶ 7.

Upon confirmation that a record demonstrates an individual is prohibited from receiving a firearm, the NICS Section will inform the FFL to deny the transfer of the firearm and to record this answer from the NICS on an ATF form (Form 4473). *Id.* at ¶ 8.  If the potential purchaser's name does not match any record searched by the NICS, then the NICS generates an automatic electronic response of "proceed" and the FFL is given the NTN and the response of "proceed." *Id.* at ¶ 9.

For those transactions in which the NICS Section cannot provide a definitive response of either proceed or deny, the transaction is delayed and placed in a "delayed status" for further research.  "Delayed" transactions are those non-canceled transactions in which the FFL has not yet been notified of the final determination.  The NICS Section conducts research on delayed

transactions to determine whether the record(s) in question demonstrates that receipt of a firearm by the potential purchaser would violate subsection (g) or (n) of the GCA or state law.  If the NICS Section cannot determine whether a delayed transaction should be denied within three business days of the initiation of the background check, the transaction will be placed in an "open" status until a final determination can be made or it purges based on the current records retention regulation (discussed below).  *Id.* at ¶ 10.

## C.   BACKGROUND CHECK RECORDS RETENTION

The NICS maintains records of open transactions until either (1) a final determination on the transaction is reached and has been communicated to the FFL as a transaction status being changed to "proceed" or "denied"; or (2) 90 days have elapsed from the date the background check was initiated, at which time all personal identifying information of the transferee and information identifying the specific FFL initiating the check is destroyed.  In accordance with the Brady Act, the only available information thereafter will be the NTN and the creation date.  *Id.*; 18 U.S.C. § 922(t)(2)(C).

Pursuant to 28 C.F.R. § 25.9, the FBI is required to maintain an automated NICS Audit Log of all incoming and outgoing transactions that pass through the system, including the type of transaction, time, date of inquiry, identifying information about the prospective transferee, and the NTN.  The NICS Audit Log is used to conduct audits of the use and performance of the NICS, notwithstanding the destruction requirement contained in 28 C.F.R. § 25.9(b)(1).  The NICS Audit Log is monitored and reviewed as part of that audit authority on a regular basis to detect any possible misuse of the NICS.  Audits are also performed based upon specific misuse allegations from law

enforcement authorities such as the ATF.  Exhibit 1, at ¶ 13; 28 C.F.R. § 25.11 (defining "misuse or unauthorized access" of the NICS).

Pursuant to 28 C.F.R. § 25.9(b)(1), the NICS Section is required to destroy all NICS Audit Log records relating to allowed transactions (other than, as mentioned above, the NTN assigned to the NICS transaction and the date the NTN was assigned).  This requires the NICS Section to destroy all personal identifying information regarding the transferee within 24 hours of informing an FFL that a transaction may proceed.  Information regarding the specific FFL initiating the NICS check is maintained pursuant to this regulation for no longer than 90 days.  The NICS Audit Log records relating to denied transactions are maintained indefinitely by the NICS Section.  Exhibit 1, at ¶ 14.

### D.    NICS RECORDS OF PLAINTIFF'S 2010 AND 2011 ATTEMPTED FIREARMS TRANSFERS

In connection with this litigation, the NICS Section conducted a search of its records in regard to Plaintiff's attempted firearms purchases.  *Id.* at ¶ 16.  Most recently, NTN 1R767GF was created on February 12, 2011, at 11:23 a.m.  The Audit Log shows that the FFL was notified to deny the transaction on February 15, 2011, at 10:11 a.m.  *Id.* at ¶ 17.

More specifically, the Audit Log indicates that, on February 12, 2011,  an FFL known in the NICS records as "All Pawn, 10595 Middle Port LA, White Plains, MD 20695" called the NICS Contracted Call Center and requested a background check on Plaintiff.  *Id.* at ¶ 17(a).  On this same date, All Pawn was advised by the NICS representative that the transaction required further review and that the initial status was "Delayed."  *Id.* at ¶ 17(b).

On February 15, 2011, information matching Daniel Hubert Ross was reviewed by a NICS Legal Instruments Examiner.  The NICS Examiner determined that a North Carolina Criminal History Record, FBI # 164776F and SID # NC 0038770A, matched all descriptive data the attempted

purchaser.  The North Carolina record contained:  (1) a Date of Arrest of March 12, 1965 for Assault

on Female; (2) a North Carolina Department of Corrections entry of March 6, 1969 for Assault with

Deadly Weapon; and (3) a North Carolina Department of Corrections entry for First Degree Murder

on March 20, 1969.  *Id.* at ¶ 17(c).

That same day, the Examiner researched the North Carolina Department of Corrections

website and determined Daniel Hubert Ross was guilty of Murder and released in 1983.  *Id.* at ¶

17(d).  The Examiner established that the attempted state of purchase was Maryland and, as a result,

submitted a request to the Legal Research and Analysis Team ("LRAT") to determine if the State

of Maryland would honor North Carolina's automatic restoration of rights.  The LRAT advised that,

based upon the information on the Maryland Pardons and Restoration Page, the automatic restoration

of rights does not nullify the conviction; therefore, the State of Maryland would not honor the

restoration of rights.  As a result, it was determined that Plaintiff was prohibited from receiving a

firearm in the State of Maryland.  *Id.* at ¶ 17(e).  All Pawn was notified at 10:11 a.m. that morning

that the transaction was "Denied" and it was also determined that the pawnbroker did not transfer

the firearm to Plaintiff.  *Id.* at ¶ 17(f).

As part of the requested review of NTN 1R767GF, a separate request was made to the North

Carolina SBI by the NICS Section in order to obtain additional disposition information for the March

20, 1969 charge of First Degree Murder.  *Id.* at ¶ 18.[3]  Plaintiff did not appeal the February 15, 2011

---

[3]As explained in the FBI's and ATF's initial Memorandum, North Carolina is responsible for providing the FBI with correct and updated records regarding these two convictions.  North Carolina has designated the SBI as the statewide repository for criminal history based on fingerprints.  N.C. Gen. Stat. § 114-19.  Local police departments and other criminal justice entities are required to submit arrest and disposition information to the SBI.  N.C. Gen. Stat. §§ 15A-502 and 15A-1382.  In turn, SBI indexes that information to the FBI's criminal history files.  N.C. Admin. Code tit. 12, r. 4F.0301, 4F.0303.

denial, so the NICS Section did not have an indication prior to this time that there was a problem necessitating further investigation.  The February 2011 transaction also occurred after the NICS Section handled Plaintiff's appeal in July 2010 and advised him of the record information.  *Id.*

The NICS Section received a response from the SBI regarding Plaintiff's 1969 conviction that reflects the final disposition of the 1969 conviction as "Conviction Set Aside-Null & Void-Of No Legal Effect."  *Id.*  This disposition renders incorrect the NICS February 2011 denial in NTN 1R767GF.  As a result of the new information provided by the North Carolina SBI, the status of the transaction was changed from "denied" to "open" status and the 1969 charge and conviction is no longer considered disqualifying.  *Id.*[4]

Nevertheless, NTN 1R767GF will remain in "open" status because of the 1965 North Carolina arrest for Assault on Female, since it is potentially prohibitive of transfer under 18 U.S.C. § 922(g)(9).  *Id.*  The arrest is without any recorded disposition that the NICS Section has been able to obtain.  The NICS Section cannot make a final determination of "proceed" or "deny" without this disposition information.  The transaction will remain in "open" status until the required information is obtained that would permit a final determination.  *Id.*

In addition to NTN 1R767GF, it was also determined that Plaintiff had a prior transaction of NTN 1HJ1-XMR.  *Id.* at ¶ 20.  In light of the records retention restrictions, however, the only

---

[4]It should be noted that the North Carolina criminal history information was not obtained during the initial review of the February 2011 transaction due to CJIS's specified access permission.  Exhibit 1, at ¶ 19.  Access to CJIS Division data systems is permitted only for defined purposes that are indicated within the purpose code.  These codes restrict the level of information returned for inquiries.  The NICS background checks are limited to purpose code "F" for firearms related inquiries to access III, which does not return all of the information on a subject's criminal history record.  This additional criminal history information from the SBI was obtained under a purpose code of "C" permitting criminal justice access to the III.  It was only after NICS had the ability to obtain the additional criminal history information from the SBI could it determine the 1969 conviction was non-prohibiting.  *Id.*

information currently available regarding this particular NTN is a letter sent to Plaintiff from the

NICS Section dated July 12, 2010. *See* Docket No. 1-2. The letter advised Plaintiff that the NICS

Section:

> was unable to obtain complete disposition information for one arrest contained on the North Carolina State record that was used as the basis for your denial. Consequently, although the original prohibitive criteria had been resolved, potentially prohibitive criteria exist on that record. Therefore, unless the appropriate documentation is submitted and/or your record is updated, any future firearm transactions will be subject to a delay.

Docket No. 1-2; Exhibit 1, at ¶ 20.

> Summarizing its records, with respect to Plaintiff, the NICS Section avers:

> [A]dditional information has been obtained that shows the February 2011 deny determination for NTN 1R767GF was incorrect . . . . However, NTN 1R767GF will remain in "open" status because of the 03/12/65 arrest for Assault on Female in North Carolina is without a disposition that would allow NICS to make a determination. This arrest is potentially prohibiting under 18 U.S.C. § 922(g)(9). The arrest is without any recorded disposition the NICS Section can obtain. The NICS Section cannot make a final determination of "proceed" or "deny" without this information. Therefore, unless the appropriate documentation is submitted by North Carolina and the record is updated, any future firearm transactions by Mr. Ross will be subject to a delay. The NICS Section has made its best effort to obtain information about the disposition of Mr. Ross's 03/12/65 arrest and has not been able to complete this inquiry. Because the state of North Carolina generated the record, NICS cannot alter, amend, modify, or otherwise change this record without the required information on this arrest's disposition from North Carolina.

Exhibit 1, at ¶ 21.

### III. STANDARDS OF REVIEW

#### A.   MOTION TO DISMISS FOR LACK OF SUBJECT-MATTER JURISDICTION

"It is elementary that the burden is on the party asserting jurisdiction to demonstrate that

jurisdiction does, in fact, exist." *Lovern v. Edwards,* 190 F.3d 648, 654 (4th Cir. 1999) (and cases

there cited); *Adams v. Bain,* 697 F.2d 1213, 1219 (4th Cir. 1982) ("The burden of proving subject

matter jurisdiction on a motion to dismiss is on the plaintiff, the party asserting jurisdiction."). A federal court is obliged to dismiss any case at any time if it determines that it lacks subject matter jurisdiction. Fed. R. Civ. P. 12(h)(3); *Goldsmith v. Mayor & City Council of Baltimore,* 845 F.2d 61, 64 (4th Cir. 1988).

In essence, there are two ways in which to present a motion for lack of subject matter jurisdiction. First, a defendant may claim that a complaint "fails to allege facts upon which subject matter jurisdiction can be based." *Adams v. Bain*, 697 F.2d at 1219. All the facts alleged in the complaint are assumed to be true and the plaintiff is essentially given the same procedural protection as he would have under a Rule 12(b)(6) motion for failure to state a claim upon which relief may be granted. *Id.* Second, a defendant may claim that the jurisdictional allegations of the complaint are sufficient, but are not true. *Id.* In that event, the Court may consider evidence beyond the pleadings in satisfying itself of its authority to hear the case without converting the proceeding to one for summary judgment. *Williams v. United States*, 50 F.3d 299, 304 (4th Cir. 1995); *Richmond, Fredericksburg & Potomac R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991) (when a defendant challenges subject matter jurisdiction pursuant to Rule 12(b)(1), "the district court is to regard the pleadings as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment.").

**B.    MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM**

A motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6) serves to test the legal sufficiency of the complaint. *E.g.*, *Giarratano v. Johnson,* 521 F.3d 298, 302 (4th Cir. 2008); *Evans v. Wilkinson*, 609 F. Supp. 2d 489, 491 (D. Md. 2009) (Titus, J.). "[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained

in the complaint." *Erickson v. Pardus,* 551 U.S. 89, 94 (2007) (citations omitted). The Court, however, "need not accept the legal conclusions drawn from the facts, and [the Court] need not "accept as true unwarranted inferences, unreasonable conclusions or arguments." *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.,* 591 F.3d 250, 253 (4th Cir. 2009) (quotation omitted).

To survive a Rule 12(b)(6) motion, a plaintiff must allege enough facts "to raise a right to relief above the speculative level" and must provide "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007). A complaint must contain "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Twombly,* 550 U.S. at 555. The Supreme Court has explained that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to plead a claim. *Ashcroft v. Iqbal,* 129 S. Ct. 1937, 1949 (2009). Rather, a complaint may survive a motion to dismiss only if it "states a plausible claim for relief" that "permit[s] the court to infer more than the mere possibility of misconduct" based upon "its judicial experience and common sense." *Id.* at 1950

Because Plaintiff is proceeding pro se here, his pleadings "must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson*, 551 U.S. at 94 (quotation omitted). Nevertheless, complaints that lack a cognizable legal theory or that fail to allege sufficient facts under a cognizable legal theory should still be dismissed. *Giarratano v. Johnson*, 521 F.3d at 304 n.5 (in pro se context, upholding *Twombly's* requirements for pleadings).

# IV. <u>ARGUMENT</u>

## A.   ALL CLAIMS AGAINST THE NEWLY-NAMED INDIVIDUAL DEFENDANTS SHOULD BE DISMISSED

Although not invited to do so by the Court, Plaintiff added five new individual defendants to his Amended Complaint, and he appears to name them solely in their official capacities.  He has named top present and former executives at ATF and top executives at the FBI and CJIS, but fails to plead any specific acts or omissions by any of these executives, let alone conduct that would cause a constitutional violation.  He also names "Special Agent Macy," presumably the point-of-contact at CJIS with whom the FFL communicated about the February 2011 attempted firearm purchase, but he again fails to identify any specific actions on his part.  Liberally construing his pleading, Plaintiff presumably names these individuals to overcome some of the failings of his previously-rejected constitutional claims.  *See* Docket No. 13, at 11.

Plaintiff's constitutional claims have been dismissed with prejudice, and his attempt to re-cast them should be rejected.  Even if the Court were to permit this amendment, and construe the claims as "personal capacity" claims to avoid the bar of sovereign immunity, *e.g., Reinbold v. Evers*, 187 F.3d 348, 355 n.7 (4th Cir. 1999), Plaintiff fails to provide any specific allegations against the individuals to support a *Bivens* claim.  *E.g., Iqbal*, 129 S. Ct. at 1948 ("[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution.").[5]  Moreover, the only permissible amendment made by Plaintiff, i.e., to attempt to state a claim under § 925A, does not permit claims against individual federal officers or agents.  *See* 18 U.S.C. § 925A (waiver of immunity is only for actions "against the United States").

---

[5]The individual federal officers and employees would be entitled to qualified immunity from Plaintiff's *Bivens* claims, even if they were properly advanced.  *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

**B.**     **PLAINTIFF'S EIGHTH AMENDMENT CLAIMS ARE BARRED**

Again ignoring the Court's admonition to restrict any amendment to a § 925A claim, Plaintiff also claims that the operation of § 922(g)(9) somehow violates the Eighth Amendment's preclusion of cruel and unusual punishments.   Docket No. 16, at ¶¶ 8-9.   To the extent the Court permits Plaintiff to advance yet another constitutional challenge to this provision of the Gun Control Act, it is plainly without merit and should be rejected.

The Eighth Amendment states:   "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted."   U.S. CONST. AMEND. VIII.   The Eighth Amendment applies only to "punishments" inflicted after conviction for crimes, not to civil processes for controlling the transfer of firearms.   *See Browning-Ferris Indus. of Vt., Inc. v. Kelco Disposal, Inc.,* 492 U.S. 257, 262-63 (1989) ("The eighth amendment is addressed to courts of the United States exercising criminal jurisdiction . . . .") (quotation omitted); *Ingraham v. Wright,* 430 U.S. 651, 664 (1977) (Eighth Amendment manifests "an intention to limit the power of those entrusted with the criminal-law function of government.").   The Eighth Amendment is simply inapplicable to Plaintiff's complaints about the operation of the firearms control laws.

Even assuming this were a criminal matter and Plaintiff could properly invoke the Eighth Amendment, it is well-settled that § 922(g)(9) does not violate the Eighth Amendment by depriving him of his right as an American citizen to own firearms.   *United States v. Finnell*, 256 F. Supp. 2d 493, 497-98 (E.D. Va. 2003) (citing *United States v. Lewis,* 236 F.3d 948, 950 (8th Cir. 2001) (rejecting Eighth Amendment challenge to § 922(g)(9)); *United States v. Jester,* 139 F.3d 1168, 1170-71 (7th Cir. 1998) (rejecting Eighth Amendment challenge to § 922(g)(1)).

-15-

C.     **PLAINTIFF IS NOT ENTITLED TO RELIEF UNDER § 925A**

Section 925A provides:

Any person <u>denied</u> a firearm pursuant to subsection (s) or (t) of section 922–

> (1) due to the provision of <u>erroneous information</u> relating to the person by any State or political subdivision thereof, or by the national instant criminal background check system established under section 103 of the Brady Handgun Violence Prevention Act; or
>
> (2) who was not prohibited from receipt of a firearm pursuant to subsection (g) or (n) of section 922,

may bring an action against the State or political subdivision responsible for providing the erroneous information, or responsible for denying the transfer, or against the United States, as the case may be, for an order directing that the erroneous information be corrected or that the transfer be approved, as the case may be. In any action under this section, the court, in its discretion, may allow the prevailing party a reasonable attorney's fee as part of the costs.

18 U.S.C. § 925A (underscoring supplied); *see also Richardson v. FBI*, 124 F. Supp. 2d 429, 430 (W.D. La. 2000) (the statute "allows a person improperly denied a firearm due to a NICS error, or who was not prohibited from firearm possession under 18 U.S.C. § 922(g) or (n), to sue the United States for an order directing that the error be corrected or that the transfer of the weapon be approved.") (underscoring supplied), *aff'd*, 264 F.3d 1141 (5th Cir. 2001), *cert. denied*, 534 U.S. 1108 (2002).

As demonstrated above, at times during two separate transactions, the FBI denied a requested firearms transfer to Plaintiff based upon information provided to NICS showing a prior conviction for First Degree Murder. Plaintiff administratively appealed the 2010 denial, but not the 2011 denial.[6] Nevertheless, in both transactions, after receiving additional information supplied by the

---

[6]The Brady Act provides that an individual denied authorization to purchase a firearm may administratively appeal the denial and the accuracy of the records on which it is based. *See* Pub. L. No. 103-159, § 103(g), 107 Stat. 1536 (1993), codified at 18 U.S.C. § 922 note; 28 C.F.R. § 25.10.

North Carolina SBI indicating the nullification of the 1969 Murder conviction, but <u>not</u> receiving

information sufficient to resolve whether the 1965 Assault on Female arrest is prohibiting, FBI's

<u>final decision</u> was to place the transactions in an "open" status.  Under the plain language of the

statute, therefore, he was not "denied a firearm" and he cannot meet this threshold requirement to

bring himself within the ambit of the statute.

Even assuming that the Court were to conclude that NICS's final response should be

construed as de facto denial (or an effective denial, if the FFL is unwilling to transfer a firearm to

Plaintiff based on an "open" or "delayed" response from NICS), Plaintiff still would not be entitled

to relief because there is no "erroneous information" to correct.  18 U.S.C. § 925A(1).  The record

is undisputed that FBI relied on information supplied to it by SBI,[7] which was at the time of these

transactions (and remains today) insufficient to allow the NICS Section to resolve whether the 1965

arrest led to a conviction for domestic violence, for which a firearms transfer would be prohibited

under 18 U.S.C. § 922(g)(9).  Likewise, Plaintiff has not demonstrated a plausible claim under the

other branch of § 925A that, in the face of the 1965 "Assault on Female" arrest, he is <u>not</u> prohibited

him from receiving a firearm under 18 U.S.C. § 922(g).  18 U.S.C. § 925A(2).

---

After exhausting these administrative remedies, an individual erroneously denied authorization to
purchase a firearm may bring suit against the United States either to obtain approval for the purchase
or to correct erroneous information in the NICS database that resulted in the denial. *See* 18 U.S.C.
§ 925A.  In light of the Court's August 4 decision, Defendants do not assert a failure to exhaust
remedies argument here, but notes that statutory and regulatory regime contemplates that NICS
typically will have the appeal process to resolve alleged errors and discrepancies prior to litigation.

[7]As the "data source" for the two convictions at issue, SBI is responsible for "ensuring the
accuracy and validity of the data it provides to the NICS index."  28 C.F.R. § 25.5(b).

The statute simply does not recognize a cause of action under these circumstances and all claims brought thereunder should be dismissed.[8]  As explained throughout these proceedings, however, Plaintiff is not without a remedy.  If the circumstances regarding the disposition of his 1965 arrest for "Assault on Female" do not legally preclude him from receiving a firearm under 18 U.S.C. § 922(g)(9), or if the North Carolina SBI submitted erroneous information about that arrest to NICS, he can prevent future delayed transactions by amending or correcting the information supplied to NICS by the North Carolina SBI, or he can bring an action under § 925A against North Carolina.

## V.  CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court dismiss Plaintiff's Amended Complaint in its entirety.

Respectfully submitted,

Rod J. Rosenstein
United States Attorney

By: ___/ s /_____
Neil R. White
Assistant United States Attorney
United States Courthouse
6500 Cherrywood Lane, Room 400
Greenbelt, Maryland  20770
(301) 344-4433
Counsel for Defendants

---

[8]In effect, in the absence of showing that erroneous information exists to justify remedial action under § 925A, Plaintiff is asking the Court simply to expunge his 1965 conviction from FBI's and ATF's records.  Even if the Court were to find that extreme or exceptional circumstances existed to justify such an equitable remedy in this case, the Court lacks the ancillary jurisdiction to expunge a state criminal record from federal databases.  *See Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994); *United States v. Lucido*, 612 F.3d 871, 875 (6th Cir. 2010); *United States v. Mitchell*, 683 F. Supp. 2d 427 (E.D. Va. 2010); *Stoute v. United States*, 2011 WL 2037672 (May 24, 2011) (Bennett, J.).

-18-

OF COUNSEL:
Jayme Kantor
Assistant General Counsel
Office of the General Counsel
Federal Bureau of Investigation
Washington, D.C.  20535

David J. Rose
Office of Chief Counsel
Litigation Division
Bureau of Alcohol, Tobacco, Firearms and Explosives
Washington, D.C.  20226