IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **DANIEL ROSS** | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | Civil No. **PJM 10-3090** |
| | * | |
| **FEDERAL BUREAU OF ALCOHOL,** | * | |
| **TOBACCO, FIREARMS, AND** | * | |
| **EXPLOSIVES, et al`** | * | |
| | * | |
| Defendants. | * | |

## MEMORANDUM OPINION

*Pro se* Plaintiff Daniel Ross filed this suit against the Federal Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF"), the Federal Bureau of Investigation ("FBI"), and individual officers of both agencies (collectively "Defendants"), alleging various constitutional, employment discrimination, and state tort causes of action, as well as claims under federal law related to his inability to purchase a firearm. In its Memorandum Opinion issued on August 4, 2011, the Court dismissed all of Ross's claims, save for the allegation that he was erroneously prevented from purchasing a firearm, granting Ross leave to file an Amended Complaint to flesh out a claim for erroneous denial of a firearm pursuant to 18 U.S.C. § 925A.

The Court now considers Defendants' Motion to Dismiss the Amended Complaint [Paper No. 17], which it construes as a Motion for Summary Judgment,[1] and Ross's own Motion for Summary Judgment [Paper No. 21]. For the following reasons, Defendants' Motion is **DENIED** and Ross's Motion is **GRANTED**. Pursuant to 18 U.S.C. § 925A, the Court **ORDERS** Defendants to approve transfer of a firearm to Ross.

---

[1] On April 4, 2012, the Court issued an Order notifying the parties that it would be treating Defendants' Motion to Dismiss as a Motion for Summary Judgment, giving the parties additional time to cite to further relevant evidence.

**I.**

**A.**

The Gun Control Act of 1968 prohibits certain categories of persons from shipping, transporting, possessing or receiving firearms or ammunition in or affecting interstate commerce. 18 U.S.C. § 922(g). This prohibition applies to individuals who have "been convicted in any court of . . . a crime punishable by imprisonment for a term exceeding one year," *id.* § 922(g)(1), or who have "been convicted in any court of a misdemeanor crime of domestic violence." *Id.* § 922(g)(9). A "misdemeanor crime of domestic violence" is defined as an offense that is a misdemeanor under state or federal law and that

> has, as an element, the use or attempted use of physical force, or the threatened use of a deadly weapon, committed by a current or former spouse, parent, or guardian of the victim, by a person with whom the victim shares a child in common, by a person who is cohabiting with or has cohabited with the victim as a spouse, parent, or guardian, or by a person similarly situated to a spouse, parent, or guardian of the victim.

18 U.S.C. § 921(33)(A).

In order to prevent such individuals from purchasing firearms, the Brady Handgun Violence Prevention Act of 1993 directed the Attorney General to establish a background check procedure that licensed firearms dealers would be required to consult in order to determine whether the "transfer" of a firearm to a potential buyer would violate federal or state law. *Id.* § 922(t)(1). The Attorney General thereafter established the National Instant Criminal Background Check System ("NICS"), managed by the FBI Criminal Justice Information Services Division's NICS Section. 28 C.F.R. § 25.3.

In Maryland, a federal firearm licensee ("FFL") is required to contact the NICS Section by telephone or via the Internet in order to initiate a background check prior to the transfer of any long gun, i.e., a rifle or shotgun. In its request, the FFL must provide the NICS Section with

identifying information, including the proposed transferee's name, sex, race, date of birth, and state of residence.  28 C.F.R. § 25.7.  The NICS Section assigns a Transaction Number ("NTN") to the inquiry, gives that number to the FFL, and then searches three electronic databases—the Interstate Identification Index, the National Crime Information Center, and the NICS Index—to determine whether state or federal records establish that the transferee is for any reason prohibited from receiving a firearm.  *Id.* § 25.6(c)(1).  If the search yields no disqualifying information, the NICS Section provides a "Proceed" response to the FFL.  *Id.*  If at least one record is found that establishes "that receipt of a firearm by the prospective transferee would violate 18 U.S.C. § 922 or state law," the NICS Section provides a "Denied" response to the FFL.  *Id.*  If, however, the NICS Section locates a record that "requires more research to determine whether the prospective transferee is disqualified from possessing a firearm by Federal or state law," it provides a "Delayed" response to the FFL.[2]  *Id.*  In the "Delayed" response scenario, the transaction remains in "Open" status, and the FFL may not complete a transfer *unless* (1) the NICS Section provides a follow-up "Proceed" response, *or* (2) three business days (exclusive of the day on which the request was made) elapse and the NICS Section does not provide a "Denied" response.  *Id.*  An "Open" transaction is considered a "non-cancelled transaction where the FFL has not been notified of the final determination," while the NICS Section "continues researching potentially prohibiting records regarding the transferee."  Still, if no final determination is communicated, the FFL is not prohibited from transferring a firearm "after three business days have elapsed since the FFL provided to the system the identifying information about the prospective transferee."  *Id.* § 25.2.

---

[2] Each "response" communicates only the appropriate directive—Proceed, Denied, or Delayed. It indicates nothing about how or why the NICS Section reached its decision or the criminal records it searched. *See* 28 C.F.R. § 25.8(g)(2) ("The NICS Representative will only provide a response of 'Proceed' or 'Delayed' (with regard to the prospective firearms transfer), and will not provide the details of any record information about the transferee.").

The FBI maintains an automated NICS Audit Log of all incoming and outgoing transactions. *Id.* § 25.9(b). The NTN and the date of all transactions, whether the FFL is given a "Proceed," "Denied," or "Delayed" response, are retained indefinitely. *Id*. Records relating to "Open" transactions, however, except for the NTN and date, are destroyed after 90 days. *Id.* § 25.9(b)(1)(ii).

If the NICS Section issues a "Denied" response, the individual who has been barred from obtaining a firearm may request an explanation. *Id.* § 29.10(a). The FFL must then provide the "denied individual" with the name and address of the FBI and the NTN associated with the background check. *Id.* The request for an explanation "must be made in writing" to the "denying agency." *Id.* The "denying agency will respond to the individual with the reasons for the denial within five business days of the receipt of the individual's request." *Id.* § 29.10(b).

> If the individual wishes to challenge the accuracy of the record upon which the denial is based, or if the individual wishes to assert that his or her rights to possess a firearm have been restored, he or she may make application first to the denying agency. If the denying agency is unable to resolve the appeal, the denying agency will so notify the individual and shall provide the name and address of the agency that originated the document containing the information upon which the denial was based. The individual may then apply for correction of the record directly to the agency from which it originated. If the record is corrected as a result of the appeal to the originating agency, the individual may so notify the denying agency, which will, in turn, verify the record correction with the originating agency (assuming the originating agency has not already notifying the denying agency of the correction) and take all necessary steps to correct the record in the NICS.

*Id.* § 29.10(c). The regulations explain these "necessary steps":

> Upon receipt of notice of the correction of a contested record from the originating agency, the FBI . . . shall correct the data in the NICS and the denying agency shall provide a written confirmation of the correction for presentation to the FFL.

*Id.* § 29.10(e).[3]

---

[3] In addition, an individual "may provide written consent to the FBI to maintain information about himself or herself in a Voluntary Appeal File to be established by the FBI and checked by the NICS for the purpose of preventing the future erroneous denial or extended delay by the NICS of a firearm transfer." *Id.* § 25.10(g).

4

At the same time, "[a]n individual may also contest the accuracy or validity of a disqualifying record by bringing an action against . . . the United States." *Id.* § 29.10(f). Under 18 U.S.C. § 925A, "[a]ny person denied a firearm pursuant to subsection (s) or (t) of section 922—

> (1) due to the provision of erroneous information relating to the person by any State or political subdivision thereof, or by the national instant criminal background check system established under section 103 of the Brady Handgun Violence Prevention Act; or
>
> (2) who was not prohibited from receipt of a firearm pursuant to subsection (g) or (n) of section 922,
>
> may bring an action against the State or political subdivision responsible for providing the erroneous information, or responsible for denying the transfer, or against the United States, as the case may be, for an order directing that the erroneous information be corrected or that the transfer be approved, as the case may be. In any action under this section, the court, in its discretion, may allow the prevailing party a reasonable attorney's fee as part of the costs.

18 U.S.C. § 925A.

**B.**

In early 2010, Ross attempted to purchase a rifle from All Pawn, a pawn shop in White Plains, Maryland. Following the prescribed procedure, All Pawn contacted the NICS Section, which created an NTN for the background check and returned a "Denied" response based on Ross's conviction for first degree murder in North Carolina in 1969, a conviction, however, that by 1983 had been set aside. Ross promptly challenged the NICS denial. Although the record is silent as to the initial exchanges between Ross and the NICS Section, the NICS Section sent Ross a letter dated July 12, 2010 in which it agreed that the nullified murder conviction was not in fact prohibitive, adding that the error had been "resolved." But the letter went on to inform Ross that the material he submitted was "insufficient to authorize [his] eligibility to purchase or redeem a firearm," because his North Carolina record also revealed "one potentially prohibitive

5

arrest" as to which the NICS Section was "unable to obtain complete disposition information," i.e. whether there had been a "conviction, dismissal, deferred adjudication, crime classification status level, domestic relationship, etc." The North Carolina record referred only to the fact of an *arrest* in 1965 for "Assault on Female."[4] The NICS Section explained that "unless appropriate documentation is submitted and/or your record is updated, any future firearms transactions will be subject to a delay." The NICS Section provided Ross with the name and location of the agency that possessed the "potentially prohibitive criteria," viz., the North Carolina State Bureau of Investigation, 3320 Garner Road, Raleigh, North Carolina 27626.[5]

The evidence before the Court does not indicate what, if anything, Ross did after receiving the letter. Under the regulations, the transaction remained in "Open" status because the NICS Section never sent All Pawn a "Denied" (or "Proceed") response. Thus, technically at least, All Pawn would have been able to complete transfer of the rifle to Ross.[6] There is no evidence, however, that the NICS Section either told Ross he could return to All Pawn to obtain the firearm or, equally important, that All Pawn, under the circumstances, would have agreed to the transfer.

The evidentiary trail picks up again on February 12, 2011, a Saturday, when Ross returned to All Pawn. But instead of attempting to complete the purchase he had tried to initiate in early 2010, Ross attempted to buy a different firearm. Given this new transaction, All Pawn once again called the NICS Section, which again generated a NTN, and again provided the shop with a "Delayed" response. On the following Tuesday, February 15, an NICS examiner

---

[4] In his original Complaint, Ross stated that he had been "convicted in North Carolina state court of a crime classified as a misdemeanor in that state that did not exceed a term of two years imprisonment." It is not entirely clear whether he is referring to the outcome of an arrest for "Assault on Female" in 1965 or some other offense.
[5] All of the FBI's information regarding this transaction had been purged pursuant to 28 C.F.R. § 25.9(b)(ii).
[6] *See* 28 C.F.R. § 25.2 (FFL not prohibited from transferring firearm "after three business days have elapsed since the FFL provided to the system the identifying information about the prospective transferee").

reviewed Ross's 1965 arrest for "Assault on Female" and his 1969 conviction for first degree murder and subsequent release from prison. As before, the examiner failed to note that the first degree murder conviction had been nullified, so he submitted a request to the FBI's Legal Research and Analysis Team ("LRAT") to determine whether Ross was prohibited from obtaining a firearm in Maryland. That same day, LRAT advised the examiner that Ross was still prohibited from obtaining a gun based on the murder conviction, again ignoring the fact that the conviction had been set aside as of 1983.[7] The NICS Section thereupon called All Pawn and advised the shop that the transaction was "Denied." When Ross contacted All Pawn later that same day, the shop informed him that the FBI had denied the transfer.

Although Ross did not challenge this new denial, the NICS Section for one reason or another undertook a further review of the transaction, in the course of which it contacted the North Carolina State Bureau of Investigation. At some point, the North Carolina Bureau informed the NICS Section that Ross's first degree murder conviction had been set aside. Given that information, the NICS Section yet again changed the status of Ross's attempted purchase to "Open." There is, however, no evidence of when the NICS Section actually made this change, nor whether it notified either Ross or All Pawn of the change. While there is also no indication that Ross returned to All Pawn to try to complete the purchase of the firearm, as far as he knew when he filed his Amended Complaint in this case in August 2011, the proposed transfer remained in "Denied" status.

---

[7] Monica Hamner, Unit Chief of the NICS Program Support Unit, says in her affidavit: "LRAT advised that based upon the information maintained by the NICS Section on their Maryland Pardon and Restoration Information Page, the automatic restoration of rights does not nullify the North Carolina conviction; therefore, the state of Maryland would not honor the North Carolina restoration of rights. As a result, the subject was prohibited in the state of Maryland ." In the Court's view, either LRAT or the State of Maryland or both misunderstood the status of the North Carolina proceeding. There was no North Carolina conviction to nullify. Neither the State of Maryland nor LRAT were in a position to create a conviction on their own.

In the course of the present litigation, Hamner reviewed all NICS records related to Ross. In her sworn statement in this suit, she concedes that nullification of Ross's 1969 murder conviction means that the "Denied" response issued on February 15, 2011 was "incorrect."[8] The conviction, she concedes, "is no longer disqualifying." Hamner continues to maintain, however, that the February transaction must remain in "Open" status because Ross's 1965 arrest for "Assault on Female" is still "potentially prohibiting under 18 U.S.C. § 922(g)(9)." As she explains:

> The arrest is without any recorded disposition the NICS Section can obtain. The NICS Section cannot make a final determination of "proceed" or "deny" without this information. Therefore, unless the appropriate documentation is submitted by North Carolina and the record is updated, any future firearm transactions by Mr. Ross will be subject to a delay. The NICS Section has made its best effort to obtain information about the disposition of Mr. Ross's 03/12/1965 arrest and has not been able to complete this inquiry. Because the [S]tate of North Carolina generated the record, the NICS cannot alter, amend, modify, or otherwise change this record without the required information on this arrest's disposition from North Carolina.

The question before the Court is whether Defendants have shown as a matter of law that they have properly put a perpetual hold on the purchase of a firearm by Ross, or whether Ross has established as a matter of law that he has erroneously been denied a firearm.

## II.

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact and entitlement to judgment as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The court "view[s] the evidence in the light most favorable

---

[8] Hamner claims that the information about nullification of Ross's conviction "was not available to the NICS Section during the initial review of the transaction due to mandated limitations on access to criminal history records." It is not clear what this means. Was the agency that was tasked with verifying the presence or absence of disqualifying criminal convictions denied access to records respecting that information? Could the NICS Section fairly rely on its own alleged inability to access the information to withhold approval of a transfer indefinitely?

to . . . the nonmovant, and draw[s] all reasonable inferences in h[is] favor without weighing the evidence or assessing the witnesses' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 645 (4th Cir. 2002). Additionally, the Court must liberally construe a *pro se* plaintiff's submissions. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citation omitted). The court, however, must also abide by the "'affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 526 (4th Cir. 2003) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993)). "A party opposing a properly supported motion for summary judgment may not rest upon the mere allegations or denials of [his] pleadings, but rather must set forth specific facts showing that there is a genuine issue for trial." *Id.* at 522 (alteration in original) (internal quotation marks and citation omitted). The mere existence of a "'scintilla of evidence'" is not enough to defeat summary judgment. *Thompson v. Potomac Elec. Power Co.*, 312 F.3d 645, 649 (4th Cir. 2002) (quoting *Phillips v. CSX Transp., Inc.*, 190 F.3d 285, 187 (4th Cir. 1999)).

## III.

Ross was first prevented from obtaining a firearm in early 2010 when he tried to purchase a rifle from All Pawn and the NICS Section returned a "Denied" response. The NICS Section admits that it erroneously concluded that his 1969 murder conviction was prohibitive when in fact the conviction had been vacated and Ross had been released from prison. The NICS Section erred once again in 2011, when it cited the 1969 murder conviction as prohibitive. But even while it eventually resolved its second error, the NICS Section also advised Ross that the information he had provided was "insufficient to authorize [his] eligibility to purchase or redeem

a firearm" and that the 1965 arrest for Assault on Female would delay any future firearms purchases in the absence of information as to the final disposition of that arrest.[9]

Although the NICS Section labeled Ross's 1965 arrest for assault on a female as "potentially prohibitive," the relevant statutory provision, 18 U.S.C. § 922(g)(9), bars receipt of firearms by individuals who have "been convicted in any court of a misdemeanor crime of domestic violence."[10] As the NICS Section acknowledges, the North Carolina arrest record does not indicate that Ross was charged with or prosecuted for, let alone convicted of, a crime of domestic violence.[11] To show that an individual committed "a misdemeanor crime of domestic violence," the offense must have

> as an element, the use or attempted use of physical force, or the threatened use of a deadly weapon, committed by a current or former spouse, parent, or guardian of the victim, by a person with whom the victim shares a child in common, by a person who is cohabiting with or has cohabited with the victim as a spouse, parent, or guardian, or by a person similarly situated to a spouse, parent, or guardian of the victim.

---

[9] Defendants argue that because the transaction remained in "Open" status, Ross was never "denied a firearm" within the meaning of 18 U.S.C. § 1925A. Assuming Defendants are correct—notwithstanding the months of delay in responding to Ross's request for an explanation, the lack of notice to Ross about his right to purchase the rifle, and All Pawn's almost certain reluctance to complete the sale under the circumstances—it can hardly be gainsaid that Ross was effectively denied a firearm when he returned to All Pawn and attempted to purchase another gun in February 2011. *See* discussion *infra*.

[10] To the extent the government argues that Ross is also precluded from obtaining a firearm pursuant to 18 U.S.C. § 922(g)(1) (barring possession of firearms by individuals who have "been convicted in any court of . . . a crime punishable by imprisonment for a term exceeding one year"), that argument fails as a matter of law. In 1965, North Carolina law defined assault as "an overt act or an attempt, with force and violence, to do some immediate physical injury to the person of another, which show of force or menace of violence must be sufficient to put a person of reasonable firmness in fear of immediate bodily harm." *State v. Roberts*, 155 S.E.2d 303, 305 (N.C. 1967) (internal quotation marks and citations omitted). A defendant found guilty of simple assault on a female could be fined fifty dollars and imprisoned for a term of up to thirty days, *see State v. Higgins*, 146 S.E.2d 681, 685 (N.C. 1966), while a male over the age of 18 who assaulted a female was guilty of a misdemeanor, "punishable in the discretion of the Court." *State v. Floyd*, 84 S.E.2d 915, 917 (N.C. 1954) (citations omitted). Such discretion was circumscribed because the maximum sentence a court could impose for a misdemeanor was two years. *State v. Woody*, 157 S.E.2d 108, 111 (N.C. 1967); *State v. Adams*, 146 S.E.2d 505, 506 (N.C. 1966). Under 18 U.S.C. § 922(g)(1), a "crime punishable by imprisonment for a term exceeding one year" explicitly *excludes* "any State offense classified by the laws of the State as a misdemeanor and punishable by a term of imprisonment of two years or less." 18 U.S.C. § 921(a)(20). It follows that even if Ross's arrest led to a conviction for assaulting a female, subsection (g)(1) would not apply to prevent him from possessing a firearm.

[11] Compare note 4, *supra*.

10

18 U.S.C. § 921(33)(A). The record in this case is totally silent about the nature of the assault, who the alleged victim of the assault was, and what her relationship was with Ross. In other words, there is nothing to suggest that Ross used or attempted to use physical force against a female with whom he shared a child, with whom he had cohabited as a spouse, or that he had a relationship with the "victim" akin to that of a spouse, parent or guardian. An assault on a girlfriend, for example, much less a stranger, would not be disqualifying.

Even assuming Ross's 1965 arrest for Assault on Female was "potentially prohibitive" in July 2010, Defendants cannot justify the position that it remained "potentially prohibitive" when Ross returned to All Pawn in February 2011. The NICS Section had its opportunity in July 2010 to verify whether transfer of a firearm to Ross would violate state or federal law based on the 1965 arrest.[12] That it did not or could not do so precluded the NICS Section from finding the *same* record "potentially prohibitive" in a subsequent transaction or, by implication, in subsequent transactions ad infinitum.

The NICS Section, in short, was acting ultra vires when it informed Ross that, although it was "unable to obtain complete disposition information" about the 1965 arrest, the "potentially prohibitive" criteria would subject his "future firearms transactions . . . to a delay." In doing so, the NICS Section erroneously shifted the burden to Ross to contact the North Carolina State Bureau of Investigation—the agency that presumably possessed the "potentially prohibitive criteria"—and required him to submit "appropriate documentation" and/or update his "record."[13] Nothing in the regulations supports the NICS Section's position that the prospective transferee

---

[12] The Court allows that a search of the databases would have been appropriate for any possibly prohibitive events occurring between early 2010, the date of Ross's initial attempt to purchase a gun, and February 2011, when he returned to attempt another purchase.

[13] The regulations make clear that the burden falls on the NICS Section to conduct additional research "to determine whether the prospective transferee is disqualified from possessing a firearm by Federal or state law." 28 U.S.C. § 25.6(c)(1). The NICS Section has three business days to ascertain whether a buyer's criminal record bars receipt of a firearm, and if it is unable to make a final decision, the FFL can transfer the firearm to the purchaser.

must disprove the existence of a potentially disqualifying criminal record to avoid all future delays.[14]

In her affidavit, Hamner labors under this misconception. She concedes that Ross's "arrest is without any recorded disposition the NICS Section can obtain"—how Ross could fare any better she does not say[15]—but then asserts that unless "appropriate documentation is submitted by North Carolina and the record is updated, *any* future firearm transactions by Mr. Ross will be subject to a delay" (emphasis added). In Hamner's view, Ross will be subject to perpetual delay in attempting to purchase a firearm, even though the NICS Section never acts within three days to deny the transfer. That, in a word, is tantamount to denial.

This is precisely the situation Ross found himself in when he entered All Pawn on February 12, 2011 and tried to purchase another firearm. The pawn shop called the NICS Section, which initiated a background check, looked at the same North Carolina criminal record it had reviewed in July 2010, returned a "Delayed" response, then inexplicably changed the "Delayed" response to "Denied."[16] Instead, The NICS Section should have told All Pawn to "Proceed" with the transaction, since the available information "did not demonstrate that the transfer of the firearm would violate federal or state law." 28 C.F.R. § 25.2.

---

[14] It would of course be different if Ross's criminal record showed a *conviction* of a crime of domestic violence, which would have justified a "Denied" response by the NICS Section. In that case, the burden would have fallen on Ross to challenge the accuracy of the record through the administrative procedures outlined in 28 C.F.R. § 29.10(c) or by filing a civil action "against the State or political subdivision responsible for providing the erroneous information . . . for an order directing that the erroneous information be corrected . . . ." 18 U.S.C. § 925A.

[15] In any case, it bears noting that Ross has submitted a statement (albeit not under seal) from the Deputy Clerk of the Superior Court for Wake County, North Carolina, certifying that a case in the name of Daniel Ross, with an offense date of 3/12/65, "has been physically destroyed or purged."

[16] The fact that the NICS Section eventually changed the status of the transaction to "Open" does not mean that Ross was never "denied a firearm." With no evidence showing that Ross knew the NICS Section reversed course and reopened the transaction before he filed the instant Amended Complaint in August 2011, he was "denied a firearm" within the meaning of 18 U.S.C. § 925A.

The Court finds that Ross was improperly "denied a firearm" within the meaning of 18 U.S.C. § 925A.[17]

### IV.

For the foregoing reasons, the Court **DENIES** Defendants' Motion to Dismiss the Amended Complaint [Paper No. 17], **GRANTS** Ross's Motion for Summary Judgment [Paper No. 21], and **ORDERS** that Defendants forthwith approve the transfer to Ross of the firearm he sought to purchase on February 12, 2011.

A separate Order will **ISSUE**.

                                                        /s/_____
                                                       **PETER J. MESSITTE**
                                          **UNITED STATES DISTRICT JUDGE**

**August 7, 2012**

---

[17] Though he seeks a "reasonable attorney's fee" as the "prevailing party" under 18 U.S.C. § 925A, as a *pro se* litigant he is not entitled to such a fee. *See, e.g.*, *Hawkins v. 1115 Legal Service Care*, 163 F.3d 684, 694-95 (2d Cir. 1998).